**Reva Lee KATZ, Appellant,**

v.

**Charles Kenneth MURPHY, Appellee.**

**No. S–11886.**

Supreme Court of Alaska.

Aug. 24, 2007.

Reva Lee Katz, pro se, Anchorage.

Charles Kenneth Murphy, pro se, Summerville, South Carolina.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

After Charles Murphy petitioned for expedited registration and enforcement of a South Carolina custody order, the superior court issued an ex parte warrant and writ of assistance authorizing Murphy, as provided in the custody order, to take immediate custody of his son Zachary, who then lived in Anchorage with his mother, Reva Katz. The warrant also allowed Murphy to delay serving notice of his action on Katz until three days after executing the warrant. Murphy obtained custody of Zachary and removed him from Alaska before Katz received notice of his action. Katz challenges the ex parte warrant and insists that Murphy's custody order is unenforceable because South Carolina lacked custody jurisdiction and failed to give her adequate notice. We hold that the warrant violated Alaska's Uniform Child Custody and Jurisdiction Enforcement Act (UCCJEA) because it was not based on a finding that Katz was imminently likely to remove Zachary from Alaska and failed to provide Katz with an opportunity to contest registration before Murphy removed Zachary from Alaska. But since Katz later consented to the South Carolina order's registration, we further conclude that the order was properly confirmed and that, under the UCCJEA, its confirmation precludes Katz from contesting enforcement on grounds of lack of jurisdiction or adequate notice.

## II. FACTS AND PROCEEDINGS

Reva Katz and Charles Murphy married in Georgia in 1987. Their adopted son Zachary was born in October 1991. Katz and Murphy divorced in 1998. A Georgia court approved a settlement agreement in their divorce proceeding under which they shared legal custody while Katz maintained primary physical custody. Murphy left Georgia after the divorce and settled in South Carolina by 2002. In the winter of 2003–2004 Katz moved to Alaska and enrolled Zachary in the sixth grade at Gladys Wood Elementary school. The parties dispute exactly when Katz established residency in Alaska but agree that she arrived here no later than February 2004.

In June 2004 Murphy traveled to Alaska to pick up Zachary and take him to South Carolina for visitation. After returning to South Carolina with Zachary, Murphy, represented by attorney Gregory S. Forman, filed a complaint with the South Carolina Family Court, seeking modification of the Georgia custody order to award sole custody of Zachary to Murphy. South Carolina attorney James Brauchle filed a limited appearance on Katz's behalf to contest South Carolina's jurisdiction to modify custody. Family Court Judge Nancy C. McLin held an initial hearing on Murphy's complaint in August 2004. On September 25, 2004, Judge McLin entered an order addressing Katz's jurisdictional challenge and the issue of interim custody. The court ruled that Zachary had sufficient ties to South Carolina to give the court jurisdiction over Murphy's motion to modify Georgia's original custody order, finding that Georgia no longer had jurisdiction and that his ties to South Carolina were stronger than his ties to Alaska.

Although the court declined to award interim custody to Murphy, it expanded his visitation during school holidays, directed Katz to provide him with Zachary's current school schedule, and ordered Katz to pay for Zachary's flights to and from Alaska. The court specified that "[t]his temporary order shall be without prejudice and each party may seek further relief at the Final Hearing." It also appointed a guardian ad litem (GAL), Bobbie Smith, to conduct a custody investigation and prepare a report on the issue. Soon after, Smith traveled to Anchorage to interview Katz and visit with Zachary; in mid-November she submitted a report to the court expressing concerns about Zachary and recommending counseling for Zachary and both parents.

In early November, Murphy filed a motion in South Carolina for an order establishing

firm dates for his Thanksgiving visitation and compelling Katz to send Zachary to South Carolina during that time. Murphy alleged that the order was necessary because Katz had sent an e-mail informing him that she would not be sending Zachary to South Carolina for Thanksgiving. Family Court Judge William J. Wylie, Jr. conducted an expedited hearing on the motion on November 19. Katz's South Carolina attorney, James Brauchle, attended the hearing. On November 22 Judge Wylie issued an order directing Katz to make Zachary available for visitation in South Carolina from November 25 to November 28 and to pay Zachary's transportation costs. The order further specified that if Katz failed to comply, the court would consider "an immediate change of custody."

Katz failed to send Zachary to South Carolina for Thanksgiving visitation. On November 29, 2004, Murphy moved for an expedited order granting him sole physical and legal custody of Zachary. Judge Wylie held a hearing on the motion on December 15, 2004. Murphy appeared at the hearing with his attorney but neither Katz nor her attorney attended, though they were both served with the motion. At the conclusion of the hearing, the court stated that it intended to grant Murphy's motion for custody. In a written order issued the same day, Judge Wylie began by noting that the court had earlier determined that South Carolina had subject matter jurisdiction to modify the original Georgia custody order. Judge Wylie then determined that the court also had personal jurisdiction over Katz. Citing a South Carolina procedural rule that requires a motion to dismiss to specify all grounds relied on for dismissal,[1] the judge concluded that Katz had waived any challenge to personal jurisdiction by appearing at the original hearing and contesting only the court's subject-matter jurisdiction. Based on Katz's failure to comply with visitation orders and evidence of her apparent failure to address Zachary's behavioral problems, Judge Wylie found that an immediate change of custody to Murphy would be in Zachary's best interests. Accordingly, the judge modified the existing custody order by awarding sole physical custody of Zachary to Murphy with supervised visits within South Carolina to Katz.

Meanwhile, the day before Thanksgiving, November 24, 2004, Katz had filed paperwork with the Alaska Superior Court in Anchorage, seeking to register the original Georgia divorce decree's custody and support provisions. Katz served Murphy by mail with a copy of her pleadings and a form notice and request that allowed him to request a hearing to contest registration. On December 13, acting pro se, Murphy signed and returned the hearing request, shortly before the South Carolina court issued its order granting Murphy's expedited motion for custody of Zachary. In the space allotted on the form for stating his defense to Katz's request to register the Georgia order in Alaska, Murphy wrote: "I have never lived in Alaska. Alaska has no jurisdiction. Georgia order[ ] needs to be registered in South Carolina for child support."

On December 16, 2004—the day after the South Carolina court granted Murphy immediate custody of Zachary—Alaska attorney S.J. Lee filed an ex parte action on Murphy's behalf with the superior court in Anchorage, seeking expedited registration and enforcement of South Carolina's three custody orders, including the December 15 order awarding custody of Zachary to Murphy. Murphy also sought an ex parte writ of assistance "authorizing law enforcement officials to assist in the transfer of custody of the minor from Ms. Katz to him." His motion for the ex parte warrant alleged:

> Mr. Murphy has a reasonable belief or expectation that Ms. Katz will flee Alaska with the minor should she obtain notice of this action on his part. She has many times threatened to disappear with the minor should Mr. Murphy ever pursue or obtain custody. She has dual citizenship with Israel and is a flight risk due to these and other facts outlined in more detail in petitioner's attached affidavit and Exhibit 4 [a copy of the GAL's report].

In an accompanying affidavit, Murphy briefly recounted the procedural history of the case in South Carolina and professed to

---

1. *See* S.C. R. Civ. P. 12(g) and (h).

"believe and fear that if Reva is given advance warning of this action, that she will take Zachary and flee." To support this belief, Murphy asserted that "Reva has repeatedly told me that if I ever tried to move for custody of Zachary, or got it, she would 'disappear' and I'll 'never see Zachary again.'" He further claimed that Katz had the "means and the motivation" to take Zachary away because she had relatives in New York and Florida and dual citizenship in the United States and Israel. In addition, Murphy attached a copy of GAL Smith's report.

Although Murphy's motion for an ex parte warrant claimed to be "supported by applicable Alaska statute, the UCCJA," it cited no specific provision of Alaska law authorizing the ex parte relief he sought. Nor did Murphy reveal in his pleadings that Katz had recently filed a petition in Anchorage to register the original Georgia custody order. Without this information the superior court apparently had no immediate way to recognize that two competing registration actions involving custody of the same child were simultaneously pending.

In a proposed "Order Regarding Ex Parte Motion for Enforcement & Writ of Assistance," Murphy sought leave to serve all relevant documents on Katz "after the transfer of custody to him of the minor"; the proposed order left a blank line for the court to determine the exact number of "days after the transfer" when service on Katz would be required. An accompanying "Writ of Assistance & Order of Enforcement" proposed to direct law enforcement officers to assist "Murphy, or any of his designated agents or attorneys in enforcing the State of South Carolina's Order of 12/15/04, which specifically awards Mr. Murphy immediate physical custody of his son, the minor Zachary Murphy." Neither of these proposed orders included any provision for a post-seizure hearing on Murphy's request to enforce the South Carolina orders; nor did they impose any conditions designed to ensure Zachary's continued presence in Alaska pending a final determination of that issue.

On December 17, 2004, the day after Murphy filed his action, Anchorage Superior Court Judge Mark Rindner granted Murphy's requests for expedited enforcement and an ex parte writ of assistance. The court found "that good grounds exist for granting Mr. Murphy's request for ex parte relief" and directed Murphy to "serve all documents filed by him ... on Reva Katz within 3 days after the transfer of custody."

Anchorage police officers took custody of Zachary on December 19 and immediately transferred him to Murphy, who returned the child to South Carolina. Murphy served Katz by mailing a form notice of registration and other pleadings to her on December 22, 2004, the third day after he took custody of Zachary. Katz did not receive notice of Murphy's registration action until the documents were delivered several days later. It is undisputed that by then, Zachary had left Alaska.

Upon receiving the notice of registration from Murphy, Katz filed a timely request with the superior court for a hearing to contest registration. Katz's request revealed that she was separately seeking to register the Georgia decree. The superior court consolidated the two cases and assigned both for hearing before Superior Court Judge John Suddock on February 16, 2005.

Katz attended the February 16 hearing and was represented by attorney Allen Bailey. Murphy's Alaska attorney, Lee, appeared for him in Anchorage; Murphy participated telephonically, along with his South Carolina attorney, Forman. At the outset, Judge Suddock asked the parties to summarize their positions. Bailey indicated that Katz wanted the court to register both the South Carolina and Georgia custody orders, giving the South Carolina order priority for the time being. He explained that South Carolina had already assumed jurisdiction over the issue of custody but that Katz was pursuing an appeal of that ruling in South Carolina; accordingly, Bailey wanted the Georgia order to be registered so that it could be enforced if Katz prevailed in her appeal:

It would be our suggestion then that the court register the orders in date order so that the South Carolina is the effective order since it was last entered until such time if, as, and when the South Carolina

court of appeals reverses the trial court. If it is not reversed, then the order remains the more recent court order and is subject to enforcement here if Mr. Murphy needs to enforce something here.

In response, Murphy's attorneys pointed out that Georgia's order had already been superceded by South Carolina's and therefore could no longer be registered. Judge Suddock then asked Bailey, "Why should I register a relic?" When Bailey replied that "we believe there's a high likelihood that [the South Carolina order] will be reversed on jurisdiction," the judge inquired, "Why not come back to me when that occurs?" Bailey accepted this invitation, answering, "We can do that."

Based on Bailey's response, Judge Suddock granted Murphy's request to register South Carolina's order and dismissed Katz's competing request to register the original Georgia order, but specified that the order of dismissal would be without prejudice. The judge later issued written orders confirming these on-record rulings.

About two weeks after the hearing, Katz, now representing herself, asked the court to reconsider its ruling. Katz's pro se motion for reconsideration argued that the South Carolina court's custody orders should not have been enforced, because South Carolina lacked subject matter jurisdiction and had failed to give her adequate notice of its proceedings. Her motion also challenged the ex parte order authorizing Zachary's seizure and transfer to Murphy's custody, arguing that these actions violated the protections established in AS 25.30.490. The superior court denied reconsideration summarily, stating that "Ms. Katz should make her arguments to the South Carolina court."

Katz then filed this appeal, renewing the points raised in her motion for reconsideration.

While Katz's appeal was pending, Murphy's South Carolina modification action proceeded to trial on the issue of Zachary's permanent custody.[2] On August 2, 2006, the South Carolina Family Court issued its final order on the matter. After summarizing the procedural history of the case, Judge Wylie revisited the issue of subject matter jurisdiction, concluding that, "[b]ecause both at the time of filing, and at the time of trial, South Carolina had at least as significant a connection with the child as Alaska did, and because the child was physically present here when this action was filed, the court believes that jurisdiction and venue are proper in Dorchester County, South Carolina." The court then entered findings of fact and conclusions of law that awarded sole legal and physical custody of Zachary to Murphy, granted Katz "reasonable supervised visitation" in South Carolina, and directed Katz to pay child support.

## III. DISCUSSION

In appealing the superior court's decision to register and enforce South Carolina's custody orders, Katz raises three points—two jurisdictional and one procedural. Initially, Katz asserts that the South Carolina orders were defective and unenforceable because the South Carolina Family Court lacked subject matter and personal jurisdiction. She argues that the court should have permitted her to contest these issues in Alaska because she received inadequate notice of the South Carolina proceedings and therefore never fully litigated issues there. Katz additionally asserts that the superior court violated procedural protections established under Alaska law by immediately transferring custody of Zachary to Murphy without giving her prior notice or an opportunity to contest Murphy's motion to register the South Carolina order. Katz urges us to vacate the registration of those orders, to assert home-state jurisdiction over custody and support, and to restore the provisions of the original Georgia orders.

In response, Murphy accuses Katz of perjury and blatant misrepresentations. He disputes many details of her descriptions of the

---

**2.** Murphy has appended a certified copy of the South Carolina court's final order to his "Notice of Oral Argument," filed with this court on August 3, 2006. It appears from the order that Katz's original South Carolina counsel, James

Brauchle, continued to provide at least nominal representation to her throughout the course of pretrial proceedings and withdrew from the case at the outset of trial, after consulting with Katz and receiving her consent.

parties' marital history, their conduct after separation, Katz's move to Alaska, Zachary's upbringing and needs, and the procedural history of their custody dispute. Relying on his own account of the disputed events, Murphy defends the South Carolina orders and urges us to affirm the superior court's decision allowing those orders to be registered and enforced in Alaska.

We turn first to Katz's procedural challenge, and then consider her jurisdictional claims.

## A. The Unconditional Transfer of Custody to Murphy Without Giving Katz Prior Notice and an Opportunity To Be Heard Violated the UCCJEA.

### 1. Statutory background

■ Katz challenges the superior court's December 17, 2004, ex parte orders, which enforced South Carolina's custody determinations by granting Murphy immediate, unconditional custody of Zachary and directed Alaska law enforcement officers to assist Murphy in obtaining custody. She insists that these orders lacked an adequate factual basis and violated the procedural protections guaranteed under AS 25.30.490 by depriving her of prior notice and an opportunity to contest the South Carolina custody orders before Murphy removed Zachary from Alaska.

To help frame our analysis of Katz's claim, we begin by describing the provisions of Alaska's UCCJEA[3] that govern enforcement of child custody orders issued by other states. These provisions strive to establish a simple, dependable, and orderly process allowing out-of-state custody orders to be enforced in Alaska when they are validly issued and remain in effect. The process established in the UCCJEA comprises three distinct requirements: registration, confirmation, and enforcement.

Under AS 25.30.410, Alaska courts must "recognize and enforce a child custody determination of a court of another state" so long as the other state had jurisdiction and its determination has not been modified by another properly entered order.[4] When the other state's order is found to meet these criteria, Alaska courts may use any enforcement remedy available under Alaska law to enforce the other state's custody order.[5]

To determine whether an out-of-state order meets the UCCJEA's enforcement criteria, the act requires the parent who seeks enforcement to register the order in an Alaska court and requires the court in which the registration occurs to notify the responding parent and provide an opportunity to contest the registration.[6]

Alaska Statute 25.30.430 defines this basic process. Under subsection .430(a), the parent seeking to register an out-of-state order must send a letter of request to the appropriate Alaska court, together with two copies of the order, a statement attesting that it remains current, and the names and addresses of both the requesting parent and the parent or person who has custody under the order.[7]

---

**3.** Alaska's UCCJEA is codified in title 25, chapter 30 of the Alaska Statutes, AS 25.30.300–25.30.910; its enforcement provisions are set out in article 2 of title 25, chapter 30, AS 25.30.400–25.30.590.

**4.** AS 25.30.410(a) provides:

A court of this state shall recognize and enforce a child custody determination of a court of another state if the court of the other state exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter.

**5.** AS 25.30.410(b); AS 25.30.430(c)(1).

**6.** *See* AS 25.30.430(b)(2); AS 25.30.440(b) ("A court of this state shall recognize and enforce ... a *registered* child custody determination of a court of another state.") (emphasis added).

**7.** AS 25.30.430(a) provides:

A child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement, by sending to the appropriate court in this state

(1) a letter or other document requesting registration;

(2) two copies, including one certified copy, of the determination sought to be registered and a statement, under penalty of perjury, that to the best knowledge and belief of the person seeking registration the order has not been modified; and

Subsections .430(b) and (c) require the court to file the out-of-state judgment and its accompanying documentation and to serve notice on all persons named in the request, providing them with the opportunity to contest the registration. This notice must specify that a registered out-of-state order is enforceable upon registration in the same manner as an Alaska court order, that a hearing to contest registration must be requested within twenty days, and that failure to contest the registration will result in the order's confirmation and will bar any later challenge that could have been asserted before confirmation.[8]

Subsection .430(d) gives the responding parent the burden of proving that a challenged custody order should not be confirmed. It also limits the scope of a permissible challenge to three narrow issues: whether the out-of-state court had jurisdiction to enter the order; whether the order was later modified by another court having jurisdiction; and whether the out-of-state court gave the responding parent adequate notice of its proceedings.[9]

Subsection .430(e) specifies that in the absence of a timely request for a hearing, the registered order becomes confirmed as a matter of law and that the court must inform all persons served of the confirmation.[10] Last, subsection .430(f) provides that, once confirmed—whether by operation of law or after a hearing—the registered order may no longer be challenged on any ground "that could have been asserted at the time of registration."[11] Once registered *and* confirmed, the out-of-state order becomes enforceable "in the same manner as a determination issued by a court of this state."[12]

Although section .430 lays out the procedural framework to be used in a typical registration case, other provisions of the UCCJEA allow these procedures to be streamlined when the requesting parent establishes

(3) except as otherwise provided in AS 25.30.380, the name and address of the person seeking registration and the parent or person acting as a parent who has been awarded custody or visitation in the child custody determination sought to be registered.

8. AS 25.30.430(b) and (c) provide:

(b) On receipt of the documents required by (a) of this section, the registering court shall
(1) cause the determination to be filed as a foreign judgment, together with one copy of any accompanying documents and information, regardless of their form; and
(2) serve notice on the persons named under (a)(3) of this section and provide them with an opportunity to contest the registration under this section.
(c) The notice required by (b)(2) of this section must state that
(1) a registered determination is enforceable as of the date of the registration in the same manner as a determination issued by a court of this state;
(2) a hearing to contest the validity of the registered determination must be requested within 20 days after service of notice; and
(3) failure to contest the registration will result in confirmation of the child custody determination and preclude further contest of that determination with respect to a matter that could have been asserted.

9. AS 25.30.430(d) provides:
A person seeking to contest the validity of a registered order must request a hearing within

20 days after service of the notice. At that hearing, the court shall confirm the registered order unless the person contesting registration establishes that
(1) the issuing court did not have jurisdiction under provisions substantially similar to AS 25.30.300–25.30.390;
(2) the child custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under provisions substantially similar to AS 25.30.300–25.30.390; or
(3) the person contesting registration was entitled to notice, but notice was not given in accordance with provisions substantially similar to AS 25.30.840 in the proceedings before the court that issued the order for which registration is sought.

10. AS 25.30.430(e) provides:

If a timely request for a hearing to contest the validity of the registration is not made, the registration is confirmed as a matter of law, and the person requesting registration and all persons served must be notified of the confirmation.

11. AS 25.30.430(f) provides:

Confirmation of a registered order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to a matter that could have been asserted at the time of registration.

12. AS 25.30.430(c)(1); *see also* AS 25.30.410(b).

circumstances calling for expedited enforcement or placing a child in imminent danger of harm or removal from the state.

Alaska Statute 25.30.460 adopts expedited procedures for enforcing out-of-state custody orders. Under AS 25.30.460(a), when a parent files a petition requesting expedited enforcement of a foreign custody determination, the petition must be verified and must attach a certified copy of the out-of-state order and any prior Alaska order confirming that order's registration.[13] In addition, under subsection .460(b), the petition must provide detailed information concerning the out-of-state order's procedural background and the nature of the relief that the petitioner seeks from the court.[14]

Once the expedited petition is filed, subsection .460(c) requires the court to issue (and usually to serve) an order directing the respondent to appear at a hearing on the next judicial day after service of the order or, if that date is impossible, on the first judicial day possible.[15] Subsection .460(d) further requires the court to specify the time and date set for the hearing and to advise the respondent that, "at the hearing," unless the respondent establishes that the custody order is unenforceable, "the court will order that the petitioner may take immediate physical custody of the child." [16]

13. AS 25.30.460(a) provides:

A petition under AS 25.30.400–25.30.590 must be verified. A certified copy, or a copy of a certified copy, of the orders sought to be enforced and of an order, if any, confirming registration must be attached to the petition.

14. AS 25.30.460(b) provides:

A petition for enforcement of a child custody determination must state

(1) whether the court that issued the determination identified the jurisdictional basis it relied on in exercising jurisdiction and, if so, what the basis was;

(2) whether the determination for which enforcement is sought has been vacated, stayed, or modified by a court whose decision must be enforced under this chapter and, if so, must identify the court, the case number, and the nature of the proceeding;

(3) whether a proceeding has been commenced that could affect the current proceeding, including proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, must identify the court, the case number, and the nature of the proceeding;

(4) the present physical address of the child and the respondent, if known;

(5) whether relief in addition to the immediate physical custody of the child and attorney fees is sought, including a request for assistance from law enforcement officials and, if so, the relief sought; and

(6) if the child custody determination has been registered and confirmed under AS 25.30.430, the date and place of registration.

15. AS 25.30.460(c) states:

On the filing of a petition, the court shall issue an order directing the respondent to appear in person with or without the child at a hearing and may enter an order necessary to ensure the safety of the parties and the child. The hearing must be held on the next judicial day after service of the order unless that date is impossible. In that event, the court shall hold the hearing on the first judicial day possible. The court may extend the date of hearing at the request of the petitioner.

Under AS 25.30.470, the court must also serve the order unless a writ of assistance is issued directing the police to serve it:

Except as otherwise provided in AS 25.30.490, the petition and order shall be served, by a method authorized by the law of this state, on the respondent and a person who has physical custody of the child.

16. AS 25.30.460(d) provides:

An order issued under (c) of this section must state the time and place of the hearing and advise the respondent that, at the hearing, the court will order that the petitioner may take immediate physical custody of the child and the payment of fees, costs, and expenses under AS 25.30.500 and may schedule a hearing to determine whether further relief is appropriate unless the respondent appears and establishes that

(1) the child custody determination has not been registered and confirmed under AS 25.30.430, and that

(A) the issuing court did not have jurisdiction under provisions substantially similar to AS 25.30.300–25.30.390;

(B) the child custody determination for which enforcement is sought has been vacated, stayed, or modified by a court having jurisdiction to do so under provisions substantially similar to AS 25.30.300–25.30.390; or

(C) the respondent was entitled to notice, but notice was not given in accordance with provisions substantially similar to AS 25.30.840 in the proceedings before the court that issued the order for which enforcement is sought; or

(2) the child custody determination for which enforcement is sought was registered and confirmed under AS 25.30.430 but has been vacated, stayed, or modified by a court having jurisdiction to do so under provisions substantially similar to AS 25.30.300–25.30.390.

At the hearing on expedited enforcement, the court must grant immediate custody to the petitioner unless the respondent shows the out-of-state order to be unenforceable.[17] Alaska Statute 25.30.480(a) describes two alternative methods to defeat enforcement: the first method, which applies if the out-of-state order has not yet been confirmed, matches the method specified in AS 25.30.430(d) [18] for defeating confirmation at a non-expedited confirmation hearing; the second method, which applies if the out-of-state order has already been confirmed, allows the respondent to defeat enforcement only by showing that, since being confirmed, the order has been modified, vacated, or stayed by a court having jurisdiction.[19]

One other enforcement provision of the UCCJEA has crucial importance here: AS 25.30.490 authorizes Alaska courts to take immediate ex parte protective measures when the moving party establishes a serious risk to the child. This provision allows a parent seeking to enforce an out-of-state child custody order to "file a verified application for the issuance of a warrant to take physical custody of the child if the child is imminently likely either to suffer serious physical harm or to be removed from this state." [20] Once the application is filed, "[i]f the court, on testimony of the petitioner or other witness, finds that the child is immi-

nently likely to suffer serious physical harm or to be removed from this state, it may issue a warrant to take physical custody of the child." [21]

But while the warrant authorizes the police to seize the child without prior notice to the respondent, the seizure does not eliminate the need for a prompt, adversary hearing to decide if the out-of-state custody order is eligible to be confirmed and enforced. Specifically, when a court issues an ex parte warrant and writ of assistance under section .490, that provision unequivocally requires that, just as in any other case involving a petition for expedited enforcement, "[t]he petition must be heard on the next judicial day after the warrant is executed unless that date is impossible. In that event, the court shall hold the hearing on the first judicial day possible." [22] Section .490 requires the court to ensure that all relevant paperwork in the case is served on the respondent when the seizure occurs: "The respondent must be served with the petition, warrant, and order *immediately* after the child is taken into physical custody." [23] Likewise, section .490 further requires that the application for the warrant "must include the statements required for petitions under AS 25.30.460(b)" [24] —that is, it must set out the same background information required when a petition seeks expedited enforcement of an out-of-

17. AS 25.30.460(d).

18. *See* note 9 *supra* (quoting AS 25.30.430(d)).

19. AS 25.30.480(a) provides:
Unless the court issues a temporary emergency order under AS 25.30.330, on a finding that a petitioner is entitled to immediate physical custody of the child, the court shall order that the petitioner may take immediate physical custody of the child unless the respondent establishes that
(1) the child custody determination has not been registered and confirmed under AS 25.30.430 and that
(A) the issuing court did not have jurisdiction under provisions substantially similar to AS 25.30.300–25.30.390;
(B) the child custody determination for which enforcement is sought has been vacated, stayed, or modified by a court having jurisdiction to do so under AS 25.30.300–25.30.390 or provisions substantially similar to AS 25.30.300–25.30.390; or

(C) the respondent was entitled to notice, but notice was not given in accordance with AS 25.30.840 or provisions substantially similar to AS 25.30.300–25.30.390 in the proceedings before the court that issued the order for which enforcement is sought; or
(2) the child custody determination for which enforcement is sought was registered and confirmed under AS 25.30.430 but has been vacated, stayed, or modified by a court having jurisdiction to do so under AS 25.30.300–25.30.390 or provisions substantially similar to AS 25.30.300–25.30.390.

20. AS 25.30.490(a).

21. AS 25.30.490(b).

22. *Id.*

23. AS 25.30.490(d) (emphasis added).

24. AS 25.30.490(b).

state custody order.[25]

Section .490 commands that the warrant "must"

(1) recite the facts on which a conclusion of imminent serious physical harm or removal from the state is based;

(2) direct law enforcement officers to take physical custody of the child immediately; and

(3) provide for the placement of the child pending final relief.[26]

Last, in addition to requiring the court to make provision in the warrant "for the placement of the child *pending final relief*,"[27] section .490 specifically empowers the court to "impose conditions on placement of a child to ensure the appearance of the child and the child's custodian" at the hearing on confirmation.[28]

As can be seen, then, section .490 allows courts to issue ex parte warrants authorizing immediate seizure of children in UCCJEA registration disputes, but only as an interim measure to protect them from imminent danger of serious harm or removal from the state "pending final relief."[29] The "final relief" contemplated by this provision is an order of enforcement issuable only after the responding party (1) receives notice "immediately after the child is taken into physical custody";[30] and (2) has the opportunity to contest enforcement at a hearing that must be held "on the first judicial day possible" after the warrant is executed.[31] And in the interim between the child's seizure and the ensuing hearing, the court "must provide for the placement of the child,"[32] bearing in mind the need "to ensure the appearance of the child and the child's custodian" at the hearing.[33]

In short, nothing in section .490 or elsewhere in the UCCJEA's enforcement provisions authorizes the court to approve an ex parte seizure and transfer of custody that is seemingly permanent, imposes no requirement to appear at a post-seizure hearing, and thus leaves the new custodial parent free to immediately remove the child from the state.[34] Indeed, besides undermining the UCCJEA's orderly three-step process of registration, confirmation, and *then* enforcement, an order of this sort would fundamentally subvert section .490's core purpose of protecting against the child's immediate removal from Alaska "pending final relief."[35]

2. **The ex parte orders granting Murphy immediate unconditional custody and enabling him to remove Zachary from Alaska before Katz received notice of his action violated the UCCJEA.**

With this statutory framework in mind, we turn to Katz's claim that the superior court erred in authorizing Murphy to seize custody of Zachary and remove him from Alaska without giving Katz notice of Murphy's registration action or affording her the opportunity to be heard.

As we detailed above in the statement of facts and proceedings, on December 16, 2004, the day after the South Carolina court issued its order awarding him custody, Murphy petitioned the superior court in Anchorage for expedited registration and enforcement of that order and applied for an ex parte warrant directing law enforcement officers to

---

**25.** *See* AS 25.30.460(b).

**26.** AS 25.30.460(c).

**27.** *Id.* (emphasis added).

**28.** AS 25.30.490(f).

**29.** AS 25.30.490(c)(3).

**30.** AS 25.30.490(d).

**31.** AS 25.30.490(b).

**32.** AS 25.30.490(c)(3).

**33.** AS 25.30.490(f).

**34.** Nor is it conceivable that any non-UCCJEA provisions of Alaska law governing enforcement of custody orders in Alaska authorize granting such relief to a petitioner seeking to register an unconfirmed order, since the UCCJEA empowers courts to enforce an out-of-state order using remedies available in Alaska only after the out-of-state order has been registered and confirmed under the UCCJEA. *See* AS 25.30.410(b); AS 25.30.430(c)(1).

**35.** AS 25.30.490(c)(3).

assist him in obtaining immediate custody. Murphy's pleadings failed to comply with the requirements of the UCCJEA in several respects.

Although Murphy expressly moved for expedited relief, his proposed notice of registration used the notice form required in a non-expedited registration proceeding: it called for service by mail and a confirmation hearing to be scheduled only if Katz asked for a hearing within twenty days. Murphy's proposed notice thus failed to recognize that, in expedited enforcement proceedings, AS 25.30.460(c) requires the court to immediately issue an order providing notice of the action and directing the respondent to appear in person before it "on the next judicial day after service."

Similarly, although Murphy's application for an ex parte warrant purported to be "supported by applicable Alaska statute, the UCCJA," Murphy failed to cite any specific provision of Alaska law supporting the relief he requested. Rather, his warrant application completely disregarded AS 25.30.490's provisions requiring that notice of the action be served immediately after execution of the warrant;[36] that a hearing on confirmation be held "on the next judicial day after the warrant is executed;"[37] and that the court "provide for placement of the child pending final relief."[38]

By the same token, because Murphy also disregarded these requirements in the proposed order and warrant he submitted to implement his warrant application, his proposed order and warrant forms impermissibly allowed delayed service of notice, failed to provide for an immediate hearing on the day after execution, and seemingly authorized an immediate and apparently permanent transfer of custody, establishing no interim placement provision to bar Murphy from immediately removing Zachary from Alaska.

In addition to incorporating these procedural flaws, Murphy's application for ex parte relief articulated an improper substantive standard for granting relief. The UCCJEA allows an ex parte warrant to be issued only "[i]f the court, on the testimony of the petitioner or other witness, finds that the child is imminently likely to suffer serious physical harm or to be removed from this state."[39] Here, Murphy did not allege any potentially serious physical harm to Zachary and did not claim or purport to show any *imminent* likelihood that Katz would remove Zachary from Alaska. He simply asserted "a reasonable belief or expectation that Ms. Katz will flee Alaska with the minor should she obtain notice of this action." And he based this belief on a brief and mostly conclusory affidavit. The only recent and specific information Murphy provided were the statements attributed to Katz in GAL Smith's report. Smith reported that Katz had told her "that what was happening [in Alaska] was none of the [South Carolina] Court's business," that "no body was going to take [Zachary] away," and "no matter what [the GAL] wrote or what the Court said that he would not have to leave her."

Despite his reliance on these statements, Murphy failed to disclose the complete context in which they were made. In November 2004 Katz had petitioned the superior court in Anchorage to register the original Georgia custody order, which awarded physical custody of Zachary to her. Although GAL Smith may not have known at the time she wrote her report that Katz intended to file a registration petition in Alaska, by mid-December, when Murphy filed his ex parte application for enforcement, Murphy unquestionably knew of Katz's competing registration action. After all, he had responded to Katz's petition for registration just two days before filing his own application for ex parte relief. The UCCJEA provisions governing Murphy's ex parte pleadings expressly obliged him to disclose "whether a proceeding has been commenced that could affect the current proceeding ... and, if so, [to] identify the court, case number, and the nature of the proceed-

---

36. AS 25.30.490(d).

37. AS 25.30.490(b).

38. AS 25.30.490(c)(3).

39. AS 25.30.490(b).

ing."[40] Yet Murphy failed to disclose and identify Katz's competing claim.

Had the superior court been aware of Katz's recent steps to assert her custodial rights through appropriate legal channels in Alaska, it might reasonably have viewed this information as undermining Murphy's ex parte allegations of reasonable grounds to believe that Katz would flee Alaska if she learned of his application to enforce the South Carolina orders. More important, the information could have added vital context to the hostile statements attributed to Katz in GAL Smith's report, since knowledge of Katz's competing claims could have prompted the court to view her comments to GAL Smith as expressions of Katz's confidence in her Alaska registration action rather than as threats to flee if the South Carolina courts took adverse action.

Murphy's apparently knowing or negligent nondisclosures and his disregard of the UCCJEA's requirements governing ex parte relief have troubling implications. It is especially troubling that Murphy filed his ex parte application with the assistance of an Alaska attorney, who had an independent duty to investigate the basis of Murphy's claims, to be aware of and comply with the requirements of Alaska law, and to be candid with the court.[41] In our view, the combined effect of the deficiencies in Murphy's pleadings may well have misled the superior court by prompting it to grant unwarranted relief that it might not otherwise have approved.

We do not mean to suggest that Murphy's misleading pleadings excuse the superior court's decision to grant his application for ex parte relief. The relief that Murphy requested was not colorably authorized under the UCCJEA and would not have been proper under any conceivable circumstances. As a result of the seemingly uncritical acceptance of Murphy's pleadings, the court issued a form warrant that included no finding of imminent risk and made no provision for timely notice, an expedited hearing, or interim placement pending final relief—all of which expressly are required under AS 25.30.490. As issued, the ex parte orders effectively authorized Murphy to permanently remove Zachary from Alaska without giving Katz any opportunity to contest the jurisdictional basis for South Carolina's custody orders.[42]

For all of these reasons, we conclude that the ex parte warrant and underlying order were impermissible and violated Katz's procedural rights under UCCJEA section .490. Our conclusion requires us to consider what remedy, if any, would be appropriate to correct the error. Because the answer to this question depends largely on our resolution of Katz's claims directed against the validity of the South Carolina orders, we next consider those claims.

---

40. AS 25.30.460(b)(3); *see also* AS 25.30.490(b) (requiring application for ex parte warrant to take physical custody to "include the statements required for petitions under AS 25.30.460(b)").

41. *See, e.g.*, Alaska Rules of Professional Conduct 1.3 (diligence); 3.1 (meritorious claims and contentions); 3.3 (candor).

42. As submitted by Murphy and ultimately issued on December 17, 2004, the court's order granting Murphy's motion for an ex parte writ of assistance found that "good grounds exist for granting Mr. Murphy's request" and allowed Murphy three days after transfer of custody to serve notice on Katz. The simultaneously issued ex parte writ of assistance unconditionally commanded Katz "to surrender custody of the minor Zachary Murphy" and directed law enforcement authorities "to assist Petitioner, Charles Murphy, or any of his designated agents or attorneys in enforcing the State of South Carolina's Order of 12/15/04, which specifically awards Mr. Murphy

immediate physical custody of his son, the minor Zachary Murphy."

On the record before us it remains somewhat of a mystery how Murphy's nonconforming ex parte motions and proposed orders managed to fly under the superior court's usually sensitive radar. In handling prior appeals involving out-of-state custody orders, we have seen no indication of a problem in interpreting and enforcing the requirements of the UCCJEA. To the contrary, the extraordinary knowledge, diligence, and discretion demonstrated on a daily basis by Alaska's trial judges in such cases inclines us to suspect that this case might reflect an uncharacteristic systemic error rather than a mistake in considered judgment or discretion. We further realize that accurate detection of pleading errors in expedited cases like this can be caused by a variety of factors that are difficult to control. But when the interests at stake are as fundamental as the custodial rights impacted here, we believe that systemic safeguards must be undertaken to avoid even rare occurrences of error.

## B. Katz Is Barred from Contesting the South Carolina Orders on Grounds of Lack of Jurisdiction and Notice Because She Consented to Their Registration in Alaska.

█ As already mentioned, besides contesting the ex parte orders issued in Alaska, Katz asserts that the South Carolina custody orders were defective, contending that they therefore could not properly be enforced in Alaska. Katz further asserts that she was entitled to contest those orders in Alaska because she did not receive proper notice of the South Carolina proceedings and never fully litigated jurisdiction there. But Katz's effort to appeal on these points is problematic.

Katz was afforded an opportunity to raise these points at the joint registration hearing held before Judge Suddock on February 16, 2005. The hearing was scheduled and held at the request of both Katz and Murphy, and its twin purpose was to allow each party to contest the other's petition for registration of the competing out-of-state orders they sought to enforce in Alaska—the original Georgia custody orders that Katz had filed and the more recent South Carolina orders that Murphy had filed.

Under the UCCJEA, Katz had the right to contest Murphy's petition to register the South Carolina orders on the same grounds she asserts here, lack of jurisdiction and lack of notice. Alaska Statute 25.30.430(d) provides that, at a hearing to contest the validity of a registered order, the person contesting registration may prevent the order from being confirmed by asserting and establishing any of three grounds; one of those grounds is that "the issuing court did not have jurisdiction under provisions substantially similar to [the UCCJEA]," [43] and another is that "the person contesting registration was entitled to notice, but notice was not given in accordance with provisions substantially similar to AS 25.30.840 in the proceedings before the court that issued the order for which registration is sought." [44]

Despite her right to contest confirmation on those grounds at the hearing before Judge Suddock, Katz did not do so. Instead, as previously noted, the attorney who then represented Katz, Allen Bailey, agreed that the South Carolina orders could be registered in Alaska, stating that Katz would challenge their validity by pursuing an appeal in South Carolina. Initially Bailey asked Judge Suddock to register the Georgia custody orders as well, so that their registration could take effect if Katz prevailed in the South Carolina appeal. But Bailey ultimately dropped this request, agreeing to dismiss Katz's own motion for registration on the understanding that Katz could renew her request if and when she prevailed in South Carolina.

By expressly agreeing to allow the South Carolina orders to be confirmed at the February 16 hearing, Bailey waived Katz's right to contest jurisdiction and notice in Alaska. The UCCJEA provides that once an out-of-state order has been registered and confirmed in Alaska, its enforcement is subject to later challenge on only one ground: that the order "has been vacated, stayed, or modified by a court having jurisdiction to do so under [the UCCJEA or provisions substantially similar to the UCCJEA]." [45]

About two weeks after Judge Suddock confirmed registration of the South Carolina orders with Katz's consent, Katz, appearing pro se, moved for reconsideration of the confirmation order. In her motion, Katz attacked the South Carolina orders on the grounds of lack of jurisdiction and notice. But Katz offered no excuse for Bailey's failure to raise these claims at the February 16 hearing; nor did she assert that Bailey lacked authority to represent her at the time. Alaska Civil Rule 77(k), which governs motions for reconsideration, does not allow the moving party to raise new grounds as a basis for reconsideration; instead the rule only allows reconsideration of points that were overlooked or misconceived despite having been properly raised. [46] Given these circum-

---

**43.** AS 25.30.430(d)(1).

**44.** AS 25.30.430(d)(3).

**45.** AS 25.30.480(a)(2).

**46.** Alaska R. Civ. P. 77(k)(1).

stances, we see no basis for concluding that Judge Suddock erred in denying Katz's motion for reconsideration.[47]

Katz briefly argues on appeal that Bailey was unprepared at the February 16 hearing, and suggests that he had no authority to waive her right to contest jurisdiction and notice in the Alaska proceeding. But her argument relies on conclusory and unverified assertions that were not raised or heard in the superior court. Moreover, Katz fails to explain why she could not have raised these arguments sooner, before her case reached appeal. We have consistently recognized that a party may not raise an issue for the first time on appeal and that cursory treatment of an issue amounts to a waiver.[48] On the record before us, we must conclude that, absent plain error, Bailey's consent to registration of the South Carolina orders waived Katz's right to challenge them in Alaska on the basis of inadequate jurisdiction and notice.[49]

We have previously recognized that plain error occurs when " 'an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[50] In cases involving enforcement of other states' orders, we have also indicated that even when jurisdiction has been fully litigated in another state, subject matter jurisdiction may still be collaterally challenged when the other state's order is patently void—that is, when it goes " 'plainly beyond [that] court's jurisdic-

tion.' "[51] In this case, however, we are unable to say that the South Carolina Family Court's assertion of jurisdiction to modify Zachary's custody went "plainly beyond" the UCCJEA's jurisdictional standards.

It is undisputed that when South Carolina made its initial determination of jurisdiction, Murphy and Katz had both permanently severed their ties to Georgia and that Zachary had recently moved with Katz to Alaska. In response to Katz's jurisdictional challenge, Judge McLin concluded that Georgia could no longer exercise home-state jurisdiction over Zachary; that he had not yet acquired a new home state; and that

> Zachary's connections with South Carolina are mo[re] substantial than his connections with Alaska. As of the date of filing, he had spent almost as much time here as he had in Alaska. The Plaintiff's connection to South Carolina is much stronger than the Defendant's connection to Alaska. The Defendant's relocation to Alaska was sudden and initially represented as temporary. For all of these reasons, the court believes that jurisdiction and venue are proper in Dorchester County, South Carolina.

Even though the evidence supporting this analysis is disputed and could reasonably be viewed as weak, the analysis itself facially comports with the requirements of South Carolina law and substantially tracks the jurisdictional standards set out in Alaska's UCCJEA.[52] In short, the South Carolina

---

47. Cf. *Stadnicky v. Southpark Terrace Homeowner's Ass'n, Inc.*, 939 P.2d 403, 405 (Alaska 1997) (observing that an issue raised for the first time in a motion for reconsideration is untimely and insufficient to preserve a claim for appeal); *Neal & Co., Inc. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995) (holding no abuse of discretion when trial court declined to reconsider ruling based upon evidence that was not before it at the time it rendered its decision, and moving party offered no explanation for failing to present evidence earlier).

48. See, e.g., *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001); *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001).

49. See *Hoffman Constr. Co. of Alaska*, 32 P.3d at 355 n. 29 (indicating that claim waived by being raised for the first time is still subject to review for plain error).

50. *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001) (quoting *Sosa v. State*, 4 P.3d 951, 953 (Alaska 2000)).

51. *Wall v. Stinson*, 983 P.2d 736, 742 (Alaska 1999) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12(1) (1982)) (alteration in original); see also *State, Child Support Enforcement Div. v. Bromley*, 987 P.2d 183, 187 (Alaska 1999).

52. *Compare* S.C.Code Ann. § 20–7–788(a)(2) (if no other state is the home state, court may assume jurisdiction if "it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships"), *with* AS 25.30.300(a)(3) (if no other state is the home state, court may assume jurisdiction

court's order may not seem convincing, but it does not strike us as obviously void, or "plainly beyond" that court's jurisdiction.[53]

Accordingly, despite the unfortunate error in allowing Zachary's ex parte removal from Alaska, we must conclude that Katz waived her right to raise jurisdiction and notice as grounds to contest registration of South Carolina's orders in Alaska and that the superior court's order confirming their registration must therefore stand. We further conclude that the proper registration of those orders leaves no remedy available that could permissibly be granted in the context of this registration proceeding to correct Zachary's premature removal from Alaska.

## IV. CONCLUSION

Although we hold that the December 17, 2004, order granting ex parte relief was erroneously entered, we AFFIRM the superior court's subsequent order confirming registration of South Carolina's custody orders.

CARPENETI, Justice, not participating.

---

if "(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships").

53. We further note that the South Carolina court's recent permanent custody determination revisited the issue of jurisdiction under current circumstances, concluding that its jurisdiction over Zachary's custody had grown considerably

stronger, whereas Zachary's ties to Alaska are obviously much weaker than they were when Murphy originally filed his motion for modification. Although we recognize that Zachary's presence in South Carolina occurred because Murphy improperly removed him from Alaska, it would nonetheless be difficult to conclude by any realistic and practical measure that as matters now stand Alaska would be a desirable location to meaningfully determine Zachary's current best interests.