Geoby Bulawan Suan SCULLY,
Appellant,

v.

Raye SCULLY, Appellee.

State of Alaska, Department of Revenue,
Child Support Enforcement
Division, Appellant,

v.

Jeffrey Veltri, Appellee.

Nos. S–8548, S–8734.

Supreme Court of Alaska.

Sept. 10, 1999.

Michelle V. Minor and Andrew M. Lebo, Anchorage, for Appellant Scully.

R. Scott Taylor, Rice, Volland & Taylor, P.C., Anchorage, for Appellee Scully.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant State of Alaska.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

### O P I N I O N

FABE, Justice.

### I.  INTRODUCTION

In 1992 the Alaska Legislature amended AS 25.24.170 to permit trial courts to contin-ue child support for eighteen-year-olds who are finishing high school while still living at home.  These consolidated appeals present the question whether this change in the law constitutes a change in circumstances permitting modification and extension of existing child support orders entered before the legislature's action.  We conclude that it does.

### II.  FACTS AND PROCEEDINGS

#### A.  History of AS 25.24.170(a)

Alaska Statute 25.24.170(a) formerly provided that if a party moved for modification, a court could modify a judgment as to the care and custody of minor children:

> Subject to AS 25.20.110, any time after judgment the court, upon motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, for the appointment of trustees for the care and custody of the minor children or for their nurture and education, or for the maintenance of either party to the action.[1]

We held in 1984 that this statute did not authorize trial courts to order a parent to pay support beyond the child's eighteenth birthday, the age of majority.[2]

In 1988 the legislature changed the age of entrance to kindergarten for public school; in order to be eligible for kindergarten, a child must now turn five before August 15 rather than November 2.[3]  This change has resulted in many children turning eighteen before their high school graduation.  Glenda Straube of the Association for Children for Enforcement of Support testified before the House Committee on Health, Education and Social Services that ninety percent of youth in the Anchorage school system will turn eighteen during their senior year.[4]  Then Representative Fran Ulmer, the bill's sponsor, also noted that "[t]he result is that many

---

1.  AS 25.24.170(a) (1991).

2.  See Dowling v. Dowling, 679 P.2d 480, 483 (Alaska 1984).

3.  Compare AS 14.03.080(d), as adopted by Ch. 98, § 1, SLA 1966, with AS 14.03.080(d), as amended by Ch. 1, § 2, FSSLA 1987.

4.  See Hearing on H.B. 52 Before the House Comm. on Health, Educ., and Soc. Servs., 17th Legis., 2nd Sess. Tape 66 No. 100 (Alaska 1992) (statement of Glenda Straube).

Alaska children must complete their final year of high school without the benefit of financial support from the non-custodial parent" and that many families will thus be forced to turn to public assistance.[5]

Because of these concerns, the legislature amended AS 25.24.170(a) in 1992 to address this problem:

> Subject to AS 25.20.110, any time after judgment the court, upon motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, for the appointment of trustees for the care and custody of the minor children or for their nurture and education, *for the care, nurture, and education of unmarried 18–year–old children of the marriage while they are actively pursuing a high school diploma or an equivalent level of technical or vocational training and living as dependents with a parent, guardian, or designee of the parent or guardian,* or for the maintenance of either party to the action.[6]

Thus, as long as an eighteen-year-old child meets these statutory conditions, a custodial parent may move for continued child support.

### B. *Scully v. Scully* [7]

James T. Scully and Raye Scully divorced in June 1991. At the time of the divorce, their twins, Amy and Jamie, were eleven years old.

In April 1991 the parties entered into a settlement agreement that the court incorporated into the divorce decree. The parties agreed that Raye would have physical custody of the children and that James would pay child support of $1,350 per month for the minor children.

The twins turned eighteen on August 25, 1997. While Amy had finished high school by this time, Jamie still had to complete his senior year. Because Jamie continued to live with his mother during the school year, Raye moved to continue child support for Jamie in

September 1997. James opposed the motion, claiming that Raye had "utterly fail[ed] to make any showing of a material change in circumstances" and that the settlement agreement "accom[m]odate[d] post-majority educational support for Jamie by ... consider[ing] [James's] spousal support payments as family support."

Judge Rene J. Gonzalez granted Raye's motion for continued support. After reviewing the settlement agreement, he specifically found that "the spousal support was intended by the parties to assist Raye Scully to 'eventually become economically self-sufficient' and was not child support." James appeals.

### C. *Child Support Enforcement Division v. Veltri*

Jeffrey Veltri and Valinda Steffl are the parents of Megan, who was born September 23, 1989. In November 1991, as part of ongoing child custody litigation, the parties entered into a settlement agreement. The court incorporated that agreement into its final judgment in February 1992. The court awarded primary physical custody to Valinda and ordered Jeffrey to pay child support of $228 per month.

The State provided public assistance to Valinda for Megan beginning in 1989 and continuing intermittently during the following years. Because of this public assistance, the State through the Child Support Enforcement Division (CSED) sought a review of the child support order in November 1996.

CSED moved to modify the child support order, requesting among other items a provision for post-majority support if Megan met the statutory conditions when she turned eighteen—namely, that she be unmarried, actively pursuing a high school diploma, and living as a dependent with a parent or guardian.

Superior Court Judge Donald D. Hopwood refused to include a provision for post-majority support, explaining that no material change of circumstances justified the post-majority support order:

**5.** Memorandum from Representative Fran Ulmer to Co–Chairs of. House Health, Education and Social Services Committee (Feb. 3, 1992).

**6.** *See* Ch. 117, § 3, SLA 1992 (emphasis supplied).

**7.** Due to James T. Scully's death, his estate, represented by Geoby Bulawan Suan Scully, has assumed prosecution of this appeal.

CSED has not demonstrated a material change in circumstances related to extending the period of support. The child is now 8½ years old. CSED presents no evidence that justifies a modification of the support order for an event 9½ years in the future.

CSED moved for reconsideration of the denial of a post-majority provision in the order. CSED argued that the change in law to allow post-majority support in child support orders qualified as a material change in circumstances, that the addition of post-majority support was in Megan's best interests, and that the requested provision was not premature because it remained contingent on satisfaction of the statutory conditions. The court denied the motion, again reasoning that the amendment to the statute did not qualify as a material change of circumstances:

> The change in AS 25.24.170 does not mandate a change in child support, and, therefore, does not constitute a change in circumstances. Unlike Civil Rule 90.3, which is mandatory, AS 25.24.170 is permissive. The burden remains on CSED here to show the change in circumstances sufficient to justify extending the period of the support obligation. CSED has failed to show, for example, that the parties did not know when the child would graduate from high school at the time the previous order entered, or that the parties did not negotiate the period of support.

The State appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ In general, we will not overturn a trial court's decision on a motion to modify child support absent an abuse of discretion.[8] "We will disturb an award only if our review of the entire record leaves us with a definite and firm conviction that a mistake has been made."[9]

■ But whether a change in law constitutes a material change in circumstances is a question of law. "We consider questions of law de novo, adopting the rule that is most persuasive in light of precedent, reason and policy."[10]

■ Finally, we review de novo the interpretation of the parties' settlement agreements, applying our independent judgment.[11]

### B. *The 1992 Amendment to AS 25.24.170(a) Constitutes a Material Change in Circumstances.*

■ The central issue in both of these cases is whether the 1992 amendment to AS 25.24.170(a) constitutes a material change in circumstances for the purpose of modifying a child support order to extend beyond a child's eighteenth birthday.[12] We conclude that it does.

First, we note that the legislature has answered this very question in its enactment of AS 25.24.170(b). Alaska Statute 25.24.170(b) provides in part that "[f]or the purposes of a motion to modify or terminate child support, the adoption or enactment of guidelines or a significant amendment to guidelines for determining support is a material change in circumstances if the guidelines are relevant to the motion." Because the 1992 amendment to AS 25.24.170(a) extends the time

---

8. *See Monette v. Hoff,* 958 P.2d 434, 436 (Alaska 1998).

9. *Hilderbrand v. Hilderbrand,* 962 P.2d 887, 888 (Alaska 1998) (citations and internal quotation marks omitted).

10. *Taylor v. McGlothlin,* 919 P.2d 1349, 1351 n. 3 (Alaska 1996).

11. *See Flannery v. Flannery,* 950 P.2d 126, 129 (Alaska 1997).

12. Raye Scully also maintains that because the 1992 amendment to AS 25.24.170(a) addresses continuation of existing child support, rather

than a recalculation of the support amount, she did not have to show a material change in circumstances before the court could extend the support order. She contends that the test for modifying a support order to provide for post-majority support should be whether a child meets these statutory conditions, rather than whether the custodial parent can prove a material change in circumstances to justify an extension. Because we conclude that the change in law qualifies as a material change of circumstances in this case, we need not decide this issue.

during which a parent may be required to pay child support, it qualifies as a change in the law governing child support guidelines.[13]

Moreover, we relied upon subsection .170(b) as support for our conclusion in *Bunn v. House*[14] that "[i]n addition to factual changes, certain changes in the law can constitute material changes of circumstances permitting the modification of child support orders."[15] While a change in legal theory[16] or a change in decisional law[17] will not constitute a material change in circumstances, an amendment to a statute, such as AS 25.24.170, which guides the court in determining the period during which child support must be paid, is the type of change in the law that the legislature intended to cover with subsection (b). Thus, the 1992 amendment to AS 25.24.170(a) was a material change in circumstances for any custodial parent who has an unmarried child over eighteen, living at home, who is still attending high school.

### C. *The Trial Court in Veltri Erred in Concluding that the Post–Majority Provision Was Premature.*

■ The trial court in *Veltri* concluded that, even if CSED demonstrated a material change in circumstances supporting an extension of Megan's child support, inclusion of a post-majority provision in the support order would be premature because the child would not turn eighteen for almost ten years. The State responds that a post-majority provision is indistinguishable from any other contingent provision included in a standard child support order, such as the requirement that parents provide health insurance if the insurance becomes available at a reasonable cost. CSED also points out that it "simply does not have the resources to calendar the dates on which each of the children in its more than 45,000 child support cases will turn 18 years of age and to file motions to modify shortly before the applicable date in each case."

Because of a legislative policy decision on the appropriate age for children to enter kindergarten, a substantial number of children will turn eighteen while still attending high school and will need continued support. If we were to require parents to delay in filing requests for extension, it could leave thousands of children without support while motions proceed through the courts. The contingent nature of the order adequately protects an obligor parent, who will only be required to provide support if a child meets the statutory requirements of being unmarried, actively pursuing a high school diploma, and living as a dependent with a parent or guardian. And it should be the exceptional case in which a court declines to extend child support payments beyond the child's eighteenth birthday where these statutory requirements have been met. For these reasons, we hold that the trial court erred in its refusal to include a post-majority provision in its modification of the *Veltri* child support order.[18]

---

**13.** The legislature omitted a proposed section of AS 25.24.170(a) that would have explicitly provided that the amendment constituted a material change in circumstances. Indeed, an earlier version of the bill included a section that stated: "The changes made by this Act constitute a material change in circumstances for purposes of a motion to modify a child support determination under AS 25.20.110." CSHB 52, Work Draft, § 13 (May 3, 1991). Still, the amendment as enacted specifically authorizes post-judgment extensions of child support where the child meets the statutory criteria. Thus, the legislature most likely deleted the section providing that the amendment constitutes a material change simply because it was unnecessary.

**14.** 934 P.2d 753 (Alaska 1997).

**15.** *Id.* at 758.

**16.** *See id.*

**17.** *See Lawrence v. Lawrence,* 718 P.2d 142, 144–45 (Alaska 1986).

**18.** The trial judge in *Veltri* also suggested that the existence of a settlement agreement on the issue of child support prevented modification of the support order. But if a movant demonstrates a material change in circumstances, the court may modify a settlement agreement's provisions on child custody or support after the court has entered a final judgment or order. In *Flannery v. Flannery,* 950 P.2d 126 (Alaska 1997), we emphasized that "[c]hild support is a matter of public concern, and neither AS 25.24.170 nor Rule 90.3(h)(1) suggests that particular terms of an agreement can totally restrict the court's ability to modify it so long as a change in circumstances is proven." *Id.* at 130–31.

**D. The Scullys Did Not Provide for Continued Child Support in Their Settlement Agreement.**

■ James Scully argues that the parties anticipated and addressed the need for continued child support in their settlement agreement. He cites *Dowling v. Dowling*[19] for the proposition that at the time of settlement, "divorcing parents [could still] 'enter into an agreement to provide for the post-majority educational support of their children, and have the agreement made part of the judgment so that it will be enforceable.' "[20] Accordingly, he claims that he and Raye accommodated post-majority educational support for Jamie by considering the spousal support payments as "family support." James maintains that the trial court erred by not holding an evidentiary hearing to determine the parties' intent.

But as Raye points out, the settlement agreement never referred to post-majority child support. And the spousal support provisions give no indication that the spousal support was in lieu of child support for Amy or Jamie after their eighteenth birthdays. Rather, as the trial court correctly noted, the only purpose of the spousal support given in the agreement is "in order [for Raye] to eventually become economically self-sufficient."

Indeed, the only support for James's contention is his own affidavit. But "[d]ifferences of opinion among the parties as to their subjective intent, expressed during the litigation, do not establish an issue of fact regarding the parties' reasonable expectations at the time they entered into the contract, since such self-serving statements are not considered to be probative."[21] After reviewing the settlement agreement, the trial court found that the parties did not intend the spousal support provisions to serve as post-majority support. We conclude that the trial court did not err in this determination and thus affirm the trial court's extension of child support beyond Jamie's eighteenth birthday.

**IV. CONCLUSION**

We conclude that the 1992 amendment to AS 25.24.170 constitutes a material change in circumstances for the purpose of extending child support beyond a child's eighteenth birthday and that the inclusion of a post-majority provision in a support order before a child's eighteenth birthday is not premature. Moreover, the Scullys did not provide for such support in their settlement agreement. Thus, we AFFIRM the superior court's decision to grant the motion to continue child support past the age of majority in *Scully* and REVERSE the decision of the superior court to deny the State's request for a post-majority support provision in *Veltri*.

**19.** 679 P.2d 480 (Alaska 1984).

**20.** *Id.* at 483 n. 7.

**21.** *Peterson v. Wirum,* 625 P.2d 866, 870 (Alaska 1981). This rule does not apply, as the opinion in *Peterson v. Wirum* itself illustrates, to litigation affidavits of a party concerning the party's intent which are supported by references to relevant extrinsic evidence. *See id.* at 871 n. 8.