Douglas W. BROTHERTON, Appellant,

v.

Douglas WARNER and Pamela J. Neiswanger, Appellees.

No. S-13541.

Supreme Court of Alaska.

Oct. 8, 2010.

41. *See Rosen v. Rosen,* 167 P.3d 692, 695 (Alaska 2007).

Douglas Brotherton, pro se, Anchorage, Appellant.

Notice of non-participation filed by Michael Gershel, Law Office of Michael Gershel, Anchorage, for Appellees Douglas Warner and Pamela J. Neiswanger.

Before: FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Douglas Brotherton appeals a superior court order extending his child support obligation for his 18–year–old son Nicholas

---

**1.** We adopt the naming convention used in Douglas and Pamela's Opposition to Douglas Brotherton's Motion for Reconsideration, April 2009.

**2.** From July 1, 2004, until they went to stay with the Warners, Douglas had full physical custody of both boys. A November 29, 2004 court order set out Tahni's obligation to pay Douglas month-

through Nicholas's graduation from high school pursuant to AS 25.24.170(a). Douglas argues that the superior court erred in interpreting both AS 25.24.170(a) and a stipulation setting out his child support obligation. He also argues that the superior court committed various procedural errors. We disagree, and affirm the superior court's order.

## II. FACTS AND PROCEEDINGS

Douglas and Tahni Brotherton married on October 1, 1981 and were divorced on April 18, 1995. They have two children together: Benjamin, born June 26, 1988, and Nicholas, born October 5, 1990.

In 2005 Nicholas and Benjamin went to stay with Tahni's brother and sister-in-law, Douglas Warner and Pamela Neiswanger (the Warners).[1] In April 2006 the Warners initiated legal action to attain custody of Nicholas. Douglas and the Warners subsequently stipulated to entry of an Order for Temporary Placement, Legal Custody and Child Support Re: Minor Child concerning Nicholas (the stipulation). The stipulation granted the Warners legal custody of Nicholas, one-half of the monthly support payments Tahni paid to Douglas,[2] and $500 per month from Douglas "for so long as the [Warners] have legal custody and physical placement of Nicholas." The stipulation acknowledged that this arrangement was a "temporary placement," called for Douglas and Nicholas to participate in counseling, and stated that the parties' goal was "to reunite Nicholas and his father." The stipulation also noted that the "unusual" circumstances of the case (Benjamin was to reside with his father, and Nicholas was to reside with the Warners) merited a variance from the calculation of child support under Alaska Civil Rule 90.3.

On October 5, 2008, Nicholas turned eighteen while enrolled in the twelfth grade at

ly child support. The stipulation provided for one-half of these payments to go to Warners until Tahni no longer owed support for Benjamin, at which point Tahni would continue to make support payments directly to whomever maintained custody of Nicholas.

Service High School. The Warners notified the Child Support Services Division (CSSD) that Nicholas was still in high school and requested post-majority support. On October 23, 2008, CSSD responded and notified Douglas that his child support obligation had been extended through Nicholas's anticipated graduation in May 2009. Douglas objected, arguing that the terms of the stipulation precluded the grant of post-majority support. CSSD responded that the parties' stipulation "did not supersede the original child support," and referred to the court order describing Tahni's support obligation to Douglas.[3] Douglas argued that because the order applied to Tahni, it did not provide a basis for imposing a child support obligation on him. On December 31, 2008, CSSD sent Douglas and the Warners a Notice of Intent to Close Case which stated that "[t]here is no current support order." On January 26, 2009, CSSD notified Douglas that he had overpaid child support by $844.77 because post-majority support had been automatically deducted from his paycheck after Nicholas was "emancipated effective October 31, 2008." [4]

In February 2009 the Warners filed a Motion to Continue Child Support Obligation pursuant to AS 25.24.170(a),[5] requesting that the superior court order post-majority support from Douglas through Nicholas's graduation from high school. Douglas opposed the motion on the grounds of improper venue and misinterpretation of the stipulation, and also filed a motion for award of judgment

requesting that the court require the Warners to repay the $844.77 overpayment identified by CSSD. The superior court issued an order on March 20, 2009 extending Douglas's support obligation "through the month of [Nicholas's] nineteenth (19th) birthday, so long as [he] is (1) unmarried, (2) actively pursuing a high school diploma or equivalent level of technical or vocational training, and (3) living as a dependent with . . . [the Warners] or a designee of the [Warners]." The superior court also issued an order denying Douglas's motion for judgment. Douglas filed two motions for reconsideration, which were denied. Douglas appeals the superior court's extension of child support, denial of judgment against the Warners for $844.77, and denial of his motions for reconsideration.

### III. STANDARD OF REVIEW

■ Interpretation of an agreement between parties is a question of law to which we apply our independent judgment.[6]

■ The interpretation of a statute is also a question of law reviewed according to our independent judgment and "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose." [7]

■ We "will not disturb the trial court's factual findings unless those findings are clearly erroneous." [8] We review the superior court's procedural decisions for abuse of discretion.[9] We also review denial of a motion for reconsideration for abuse of dis-

---

3. Tahni's support obligation was memorialized on a standardized "Order for Modification of Child Support" form. The form provides that post-majority support must continue while an 18–year–old is enrolled in high school unless the parties specifically opt out of this obligation by checking a box. The box was not checked, so Tahni's support obligation continued after the boys turned 18.

4. CSSD notified the Warners that they had received the overpayment on February 4, 2009.

5. AS 25.24.170(a) provides that:
   [A]ny time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for . . . the care, nurture, and education of unmarried 18–year–old children of the marriage while they are actively pursuing a high

school diploma or an equivalent level of technical or vocational training and living as dependents with a parent, guardian, or designee of the parent or guardian.

6. *Hixson v. Sarkesian*, 66 P.3d 753, 757 (Alaska 2003) (citing *Flannery v. Flannery*, 950 P.2d 126, 129 (Alaska 1998)).

7. *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

8. *T. Ferguson Const., Inc. v. Sealaska Corp.*, 820 P.2d 1058, 1062 (Alaska 1991).

9. *Rockstad v. Erikson*, 113 P.3d 1215, 1220 (Alaska 2005).

cretion.[10] We will find an abuse of discretion "only when, after reviewing the entire record, we are left with a definite and firm conviction that the lower court erred."[11]

## IV. DISCUSSION

### A. The Superior Court Correctly Granted The Warners' Motion To Continue Douglas's Child Support Obligation.

The superior court awarded the Warners post-majority support for Nicholas based upon AS 25.24.170(a) and *Scully v. Scully,* where we held that "it should be the exceptional case in which a court declines to extend child support payments beyond the child's eighteenth birthday where [the] statutory requirements [for AS 25.24.170(a) ] have been met."[12] Douglas argues that the superior court erred in granting the motion to extend because: (1) the parties' stipulation precluded an award of post-majority support; (2) AS 25.24.170(a) does not apply to the Warners; and (3) the Warners' motion was not timely.

### 1. The 2006 stipulation does not preclude post-majority support; evidence indicates that the parties anticipated support would continue post-majority.

■ Douglas argues that the superior court erred by granting post-majority support because the parties' stipulation precludes such an award. He relies upon the following language from the stipulation:

Beginning in July, 2006 and lasting for *so long as the Intervenors have legal custody* and physical placement of Nicholas, [Doug-

las] shall satisfy his child support obligation to the [Warners] as follows.... (Emphasis in Appellant's Brief.)[13]

The agreement also twice specifies that the Warners' custody of Nicholas was to be "temporary."

We have explained that:

Our primary goal in contract interpretation is to give effect to the parties' reasonable expectations. We discern the parties' reasonable expectations by looking first at the written agreement and also extrinsic evidence regarding the parties' intent at the time the contract was made.[14]

The stipulation's plain language makes clear that the parties' originally intended the custody agreement to be temporary; the stipulation was to expire when Nicholas was reunited with his father. That said, we see nothing in the text of the stipulation that can fairly be construed as an agreement by the Warners to forfeit the possibility of post-majority support if Nicholas did not reunite with his father. We also find nothing in the record supporting the assertion that Douglas and the Warners consciously bargained for the provision of post-majority support. The record supports the superior court's finding that, at the July 26, 2006 settlement proceedings, "it was never suggested that the ending of child support at age 18 was a quid pro quo for the agreement. To the contrary, the hearing indicated that while deviation in the amount of child support was considered, the duration was not."[15]

---

10. *Smith v. Groleske,* 196 P.3d 1102, 1105 (Alaska 2008).

11. *Id.* at 1105–06.

12. 987 P.2d 743, 747 (Alaska 1999).

13. Douglas also cites to AS 25.20.010, which states that: "A person is considered to have arrived at majority at the age of 18, and thereafter has control of the person's own actions and business and has all the rights and is subject to all the liabilities of citizens of full age, except as otherwise provided by statute."

14. *Van Alfen v. Van Alfen,* 909 P.2d 1075, 1077 n. 5 (Alaska 1996) (internal citations omitted).

15. During the settlement proceedings, the parties reviewed the elements of the stipulation and discussed the ramifications of Douglas's possible job change. But the parties did not address the endpoint of the agreement or the possibility of post-majority support, and the superior court affirmatively noted that it was not clear that the stipulation was only for the short-term. At no point during the hearings held on July 20, 23, or 26 did the parties make any statements manifesting an intent to preclude post-majority support, or acknowledging such preclusion as part of the bargaining process.

Tahni's support obligation to Douglas reinforces the conclusion that the parties acknowledged the need for support to continue until Nicholas and Benjamin completed high school. The order setting out Tahni's support obligation to Douglas required that her support payments would continue after the boys' 18th birthdays so long as they were in high school.[16] Indeed, Tahni paid Douglas child support for eleven months after Benjamin's 18th birthday. Tahni's obligation to pay Douglas child support for Nicholas also continued after Nicholas turned 18. And the stipulation's treatment of Tahni's obligation indicates that her support payments for the boys would continue regardless of where they resided. Because the stipulation did not expressly address post-majority support, and because Tahni's support obligation indicates that the parties clearly contemplated the need to support both boys after age 18, we conclude that the superior court correctly decided that the parties' stipulation did not preclude post-majority support.

### 2. The superior court correctly applied AS 25.24.170(a) to the Warners.

Douglas argues that AS 25.24.170(a) does not apply in this case because "the Warners do not meet the statutory requirement of 'parent, guardian, or designee of the parent or guardian.'"

In 1984, our court held that AS 25.24.170(a) did not permit courts to award post-majority support.[17] But the legislature changed the entrance age for public kindergarten in 1988, resulting in a marked increase in the number of children turning 18 before their graduation from high school.[18] In response, Representative Fran Ulmer sponsored a bill to amend AS 25.24.170(a) in 1992 to address the fact that, with the change in school-entrance age, "many Alaska children must complete their final year of high school without the benefit of financial support from the non-custodial parent," and many families may thus be forced to resort to public assistance.[19] The bill's passage amended AS 25.24.170(a) to fill this gap, providing support for children who reach the age of majority but remain enrolled in high school and living in the home of "a parent, guardian, or designee of the parent or guardian."[20]

Douglas argues that while the Warners may have been a "designee of the parent or guardian" before Nicholas turned 18, this status expired when he reached the age of majority and could no longer be subject to the "legal custody" of another person. We disagree. Douglas's interpretation of AS 25.24.170(a) renders the statute meaningless; if support were tied to legal custody, the superior court could *never* award child support after a child's 18th birthday. We construe statutes according to the legislature's intent,[21] and the clear intent of the amendment to AS 25.24.170(a)—to provide support for children who reach the age of 18 while still living as dependents of their parents or other parties and attending high school—would be frustrated if the definitions of "parent," "guardian," and "designee" were premised upon the existence of a legal custody relationship. For this reason, we conclude that the fact that Nicholas was in the custody of third-party "designees," rather than one of his parents, does not affect application of the statute.

Douglas also argues that the superior court erred by relying on AS 25.24.170(a) and

---

**16.** The order requires that support continue "while each child is 18 years old if the child is (1) unmarried, (2) actively pursuing a high school diploma or equivalent level of technical or vocational training, and (3) living as a dependent with the obligee parent or guardian or designee of the parent or guardian."

**17.** *Dowling v. Dowling,* 679 P.2d 480, 483 (Alaska 1984).

**18.** *Scully v. Scully,* 987 P.2d 743, 744 (Alaska 1999).

**19.** *Id.* at 744–45 (quoting Memorandum from Representative Fran Ulmer to Co–Chairs of House Health, Education and Social Services Committee (Feb. 3, 1992)).

**20.** *Id.* at 745 (quoting AS 25.24.170(a)).

**21.** *Nat'l Bank of Alaska v. Ketzler,* 71 P.3d 333, 334–35 (Alaska 2003).

*Scully v. Scully*[22] because both authorities leave an award of post-majority support to the discretion of the court and allow that in an "exceptional case" such support may not be appropriate. The fact that courts have discretion in this area does not provide any basis for Douglas's assertion of error by the superior court. The stipulation's acknowledgment that Nicholas's custody arrangement was "an unusual circumstance" merely characterized the custody situation; it does not, absent additional facts, indicate that this is an "exceptional case" within the meaning of *Scully.*

### 3. The Warners' motion was timely and did not establish a retroactive child support arrearage.

Douglas argues that the superior court erred by granting the Warners' motion to extend child support because it was not timely and because, by granting the motion, the court effectively established a retroactive child support arrearage in violation of Alaska Civil Rule 90.3(h)(2). The Warners' motion to extend was filed on February 18, 2009, four months after Nicholas turned 18. The superior court order extended Douglas's support obligation from the date of Nicholas's 18th birthday.

### i. The Warners' motion was timely.

Douglas's assertion that the Warners' motion was not timely rests on our decision in *Bennett v. LeBlanc.*[23] In *Bennett*, we upheld a superior court decision denying a party's motion for post-majority support when the party waited to file a request for support until after the child had both turned 19 and completed high school.[24] *Bennett* does indicate that it can be within the discretion of the superior court to deny an untimely motion for post-majority support, but it does not undermine the superior court's extension of Douglas's support award. Within weeks of Nicholas's birthday, the Warners pursued post-majority support through

CSSD. And they filed the motion to extend child support less than a month after CSSD decided that there was no post-majority support obligation under the existing support order. The situation here is fundamentally different from that confronted by the superior court in *Bennett*: it is undisputed that Douglas had notice of the Warners' request for post-majority support in the month Nicholas turned 18. It was not an abuse of discretion for the superior court to treat the motion to extend as timely filed, and to extend child support from the date of Nicholas's birthday.

### ii. The Warners' motion did not establish a retroactive child support arrearage.

Douglas's assertion that the superior court established a retroactive child support obligation relies on our decision in *State, Department of Revenue, Child Support Enforcement Division v. McCormick.*[25] Specifically, Douglas's argument turns on interpretation of the following paragraph from that decision:

> When a support order by its own terms expires upon a child's eighteenth birthday, a later order providing for post-majority support does not modify any provision of the original order; it extends the order to a time period not covered by the original order. Thus, *barring an affirmative provision in the original support order or in an incorporated agreement establishing that the issue of post-majority support was expressly considered and decided,* a subsequent motion to extend the duration of support is not a motion to modify the original order and need not allege a change of circumstances.[26]

Nothing in the parties' stipulation affirmatively establishes any position on post-majority support. *McCormick* thus undermines Douglas's argument: because post-majority support was not expressly addressed in the

**22.** 987 P.2d 743 (Alaska 1999).

**23.** 2002 WL 1998451 (Alaska Aug. 28, 2002). We note that *Bennett* is a non-precedential memorandum opinion and thus offers only non-binding guidance in this case.

**24.** *Id.* at *1–2.

**25.** 3 P.3d 930 (Alaska 2000).

**26.** *Id.* at 931 (emphasis added).

parties' stipulation, the Warners' motion to extend child support did not retroactively modify the original support agreement in violation of Civil Rule 90.3(h)(2).[27] The order granting the Warners' motion simply extended Douglas's support obligation to a time period not addressed by the existing support order, a practice we have previously affirmed.[28]

▮▮▮▮ To the extent Douglas argues he did not receive adequate notice of the extension of his support obligation, he is mistaken. Although the Warners' motion did not seek modification of the original support agreement, the notice requirements governing a motion to modify were satisfied here. We have held that "absent good cause, a modified child support order should be effective from the date the parent receives notice that a modification is being considered."[29] Douglas received notice from CSSD that his support obligation was to be extended on October 23, 2008. Because this notice was given the same month that Nicholas turned 18, the superior court did not err in ordering that the support obligation continue uninterrupted from Nicholas's birthday.

### B. Any Error By The Superior Court In Denying Douglas's Motion For Judgment Was Harmless Error.

Douglas argues that the superior court erred by denying the motion for a judgment of $844.77, the amount CSSD determined he had overpaid after Nicholas reached the age of 18. Douglas raises three arguments on this point: (1) the superior court exceeded its authority by overturning a CSSD administrative decision; (2) he was entitled to judgment as a matter of law because the Warners did not oppose his motion for judgment; and (3)

the CSSD-determined overpayment was an independent obligation that should have been enforced regardless of the superior court's extension of the support award.

### 1. It was harmless error for the superior court to address CSSD's interpretation of Douglas's child support obligation in its order denying judgment.

▮▮▮▮ Douglas argues that the superior court overstepped its authority when it denied his motion for judgment because the court's order "overturn[ed] CSSD's administrative ruling [interpreting the stipulation]." Douglas specifically objects to the emphasized portion of the following passage from the superior court's order:

CSSD suggested there was an overpayment of child support based on their interpretation that support was to end when Nicholas turned 18. But *the court has found that interpretation to be wrong* and has extended the support obligation. Consequently there is no basis for a judgment.

Douglas argues that the superior court exceeded its authority by declaring CSSD's interpretation "wrong" because CSSD's administrative decision could only be challenged "in the form of a properly filed appeal."[30] But Douglas's characterization of the superior court's order is erroneous: the court order extending Douglas's support obligation did not actually conclude that CSSD's administrative decision incorrectly interpreted the original child support obligation. Rather, the superior court found that extrinsic evidence indicated that the parties did not expressly address post-majority support in their stipulation. This is why the superior court was free to extend the child support

---

27. *See also Benson v. Benson*, 977 P.2d 88, 92 (Alaska 1999) (holding that the retroactive application of the child support formula in Civil Rule 90.3 to a period of years in which there was no existing child support order did not violate Rule 90.3(h)(2)'s prohibition on retroactive modification of arrears).

28. *Id.; see also Vachon v. Pugliese*, 931 P.2d 371, 382 (Alaska 1996) (noting that an award of child support for a past period during which there was no existing support order does not violate Rule 90.3(h)(2)'s prohibition on retroactive modification of support arrearages).

29. *State, Dep't of Revenue, Child Support Servs. Div. v. Wise*, 122 P.3d 212, 214 (Alaska 2005) (discussing *State, Dep't of Revenue, Child Support Enforcement Div. v. Dillon*, 977 P.2d 118, 119–20 (Alaska 1999)).

30. Under AS 25.27.210(a), judicial review of administrative decisions "establishing or modifying a duty of support or amounts of support due" is permitted only "by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters."

obligation. We agree that it was confusing for the superior court's order denying judgment to have characterized CSSD's interpretation of the stipulation as "wrong," but this misstatement was harmless error. It is not grounds to overturn or vacate the superior court's order on the Warners' motion to extend child support.[31]

**2. The superior court did not err by denying Douglas's motion for judgment, even though the Warners never opposed it.**

■ Douglas argues that the superior court erred by denying his motion for judgment because the Warners never responded to this motion. Douglas's argument is legally incorrect. We have consistently held that "[t]he fact that a motion is uncontested does not mean that it must be granted as a matter of right."[32] The superior court was obligated to consider and decide Douglas's motion on its merits, even though the Warners never responded. The contention that the motion for judgment should have been granted because it was unopposed is contrary to Alaska law.

**3. There was no over-payment.**

Douglas argues that the superior court erred by denying his motion for judgment because CSSD's determination that he had overpaid his child support obligation by. $844.77 created a distinct legal obligation unrelated to the court's award of post-majority support.

CSSD issued a notice of overpayment because it determined that Douglas was not obligated to pay post-majority support for Nicholas, and that he had made two support payments after Nicholas turned 18. Because we conclude that the superior court permissi-

bly extended Douglas's support obligation, Douglas *was* required to pay child support to the Warners without interruption; there was no overpayment. The superior court correctly declined to enter judgment in Douglas's favor.

**C. The Superior Court Correctly Denied Douglas's Motions For Reconsideration.**

■ Douglas argues that the superior court erred by denying his motions for reconsideration[33] because the court "failed to address any of the points raised in said motion[s]." Douglas's motions for reconsideration argued that the superior court: (1) "overlooked or misconceived" the fact that the stipulation provided for child support only when the Warners maintained "legal custody" of Nicholas and he remained living with them; (2) incorrectly applied AS 25.24.170(a) to the Warners, given that they were no longer Nicholas's legal guardians after he turned 18; (3) retroactively established child support arrears in violation of Civil Rule 90.3(h)(2); and (4) should have granted his motion for judgment as a matter of law because the Warners never contested CSSD's interpretation of the existing support agreement or its determination that overpayment had occurred. The superior court's order denying reconsideration did not directly address the merits of each of these arguments,[34] but the court was not required to do so. With one exception, the motions for reconsideration reiterated points previously made in motions that had been considered and correctly denied by the superior court. Douglas's new argument, that the court should have granted his motion for judgment because it was unopposed, is both legally incorrect and an improper basis for a motion for reconsideration.[35] The superior court's

---

31. *See* Alaska Rule of Civil Procedure 61 ("[N]o error or defect in any ruling or order ... is ground for ... disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").

32. *Pomeroy v. Rizzo ex rel. C.R.*, 182 P.3d 1125, 1131 (Alaska 2008) (quoting *Gallagher v. Gallagher*, 866 P.2d 123, 124 (Alaska 1994)).

33. Douglas filed two separate motions for reconsideration, one addressing the award of post-

majority support and the second addressing denial of his motion for judgment.

34. The superior court's order stated only that, "The court believes that the court's authority to require child support beyond age 18 if the child remains in school extends to cases where the child is in the custody of third parties."

35. *See Katz v. Murphy*, 165 P.3d 649, 661 (Alaska 2007) ("Alaska Civil Rule 77(k), which governs motions for reconsideration, does not allow the

denial of Douglas's motions for reconsideration, without further explanation, was not an abuse of discretion.

## V. CONCLUSION

We AFFIRM the superior court's grant of post-majority support to the Warners and its denial of Douglas's motion for judgment.

CARPENETI, Chief Justice, not participating.

---

moving party to raise new grounds as a basis for reconsideration; instead the rule only allows reconsideration of points that were overlooked or misconceived despite having been properly raised.'').