NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DANIEL P. BROWN, | ) | |
| | ) | Supreme Court No. S-14870 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-92-08561 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CORRIENE A. DEMIENTIEFF, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1465 - August 7, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Gayle J. Brown, Anchorage, for Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I.    INTRODUCTION

Daniel Brown and Corriene Demientieff divorced in 1996. At the time Daniel owed a substantial child support arrearage and other obligations to Corriene, and the court offset these debts by awarding Corriene a significant portion of Daniel's pension in an otherwise 50/50 property division. A qualified domestic relations order (QDRO) directed 88% of Daniel's pension to Corriene and 12% to Daniel. In a subsequent 1999 order the court stated that the QDRO could be adjusted if the child

---

\*      Entered under Alaska Appellate Rule 214.

support arrearage were satisfied before Daniel's retirement. In 2011, eight years after satisfying the child support arrearage, Daniel sought to modify the QDRO as contemplated by the 1999 order. But Daniel also sought to further modify the QDRO percentages based on claims that: (1) Corriene's pension had not been divided or taken into account by the trial court when coming to its 50/50 property division; and (2) the trial court had mistakenly overstated other amounts he owed Corriene in the property division and therefore mistakenly overstated Corriene's QDRO percentage. The superior court granted Daniel partial relief, adjusting the QDRO percentages to eliminate the child support arrearage component, but denied Daniel's other modification requests. Daniel moved to reconsider, but after considering the merits of Daniel's arguments, the superior court denied reconsideration. Daniel appeals, arguing that the superior court erred in denying his motion for reconsideration. Because the superior court did not abuse its discretion in denying the motion for reconsideration, we affirm.[1]

## II.    FACTS AND PROCEEDINGS

Daniel and Corriene married in April 1977 and separated in June 1992. Following trial the superior court entered a divorce decree in August 1996. The court divided the marital estate equally.

The superior court concluded that Daniel's child support arrearage and other obligations to Corriene for payment of marital debt were at least $75,000 and that the one easily divisible marital asset was Daniel's pension, valued at about $185,000. Due to Daniel's past non-compliance with child support orders and the unlikelihood of

---

[1]     We generally review trial court denials of motions for reconsideration for abuse of discretion. *Brotherton v. Warner*, 240 P.3d 1225, 1228 (Alaska 2010); *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.,* 895 P.2d 497, 506 (Alaska 1995). We also generally review decisions on Alaska Civil Rule 60(b) motions for abuse of discretion. *Ray v. Ray*, 115 P.3d 573, 576 (Alaska 2005).

his satisfying the debt obligations, the court awarded Corriene 88% of Daniel's pension. The award was put into effect by a QDRO.

The State of Alaska's Child Support Services Division (CSSD) later began garnishing Daniel's wages to satisfy his child support arrearage. In 1999 the superior court entered the following order:

> To the extent that child support arrears that existed prior to August 12, 1996 are actually collected, the percentage available in [Daniel's] pension above the 50 percent already allocated to [Corriene] as part of the property settlement may need to be adjusted, at or near the time of [Daniel's] retirement.

Daniel satisfied the child support arrearage in August 2003. Nearing retirement, in August 2011 Daniel moved under Alaska Civil Rule 60(b)(5) to modify the QDRO.[2] Daniel requested a 50/50 pension re-division to reflect his satisfaction of the child support arrearage. At an initial hearing, Daniel articulated an additional argument: that the original trial court had mistakenly overstated the amount of other marital debt and that the 38% of Daniel's pension awarded to Corriene above her otherwise 50% should be reduced. The superior court directed Daniel's attorney to calculate the child support adjustment for the QDRO and stated that all issues would be decided by motion practice.

In October 2011 Daniel moved, without citing any authority, to modify the 1996 findings of fact and conclusions of law underlying the divorce property division. Daniel argued that the original property award was predicated on a 50/50 division, and that the unequal division of his pension was designed to accommodate the court's

---

[2]     Daniel relied on the Rule 60(b)(5) provision allowing a party to seek relief from a final judgment on the ground that "it is no longer equitable that the judgment should have prospective application." A Rule 60(b)(5) motion must be brought "within a reasonable time" after the final judgment being challenged.

prediction that Daniel would not satisfy existing child support and other financial obligations to Corriene. He then claimed that the trial court had included financial obligations to Corriene that did not exist. He also argued that Corriene's own pension had not been considered in the original property division, "albeit totaling just a few thousand dollars[,]" and that it should be considered in connection with the QDRO modification. Daniel requested that the original divorce property division be modified to reflect a 50/50 division of his pension.

In February 2012 Corriene filed a non-opposition to Daniel's QDRO modification request, but only to the extent of the child support adjustment. She asserted that Daniel had owed her nearly $35,000 in other financial obligations included in the QDRO percentages, and that if he were to pay her a lump sum for that amount she would agree to a 50/50 division of Daniel's pension.

In April 2012 Daniel supplemented his motion to modify the 1996 findings of fact and conclusions of law underlying the divorce property division. Daniel reiterated his position that a part of the financial obligations making up the pension percentage awarded Corriene were non-existent and claimed that because he raised the issue of Corriene's pension in 1999, it should be equitably divided.

During a May 2012 evidentiary hearing Daniel raised a new argument to support his requested QDRO modification. He explained that prior to the marital property allocation in the original proceedings, an $18,000 deficiency judgment was entered against him after a truck and boat were repossessed, and argued that Corriene should have been allocated half of the debt.

The superior court granted relief based on Daniel's satisfaction of the child support arrearage, modifying the QDRO to reduce Corriene's percentage of Daniel's pension. Daniel's requests for further modification were denied. The court found insufficient grounds to credit Daniel for the $18,000 deficiency judgment, reasoning that

had Daniel sold the assets as the original trial court ordered, instead of allowing them to be repossessed, a credit would have resulted to his share of the marital estate. The court also noted that as to the other marital debts Daniel had complained about, the parties agreed at the hearing that Corriene had paid them and had been entitled to reimbursement. Finally, the court found that although the failure to value and divide Corriene's pension at the 1996 divorce trial was a mistake, Daniel's request for relief was untimely under Rule 60(b)(1).[3]

Daniel filed a motion to reconsider, contending that the superior court had failed to properly consider his requests for additional credits on his pension percentage with respect to half of the $18,000 deficiency judgment and half of the marital share of Corriene's pension. As to the deficiency judgment, he argued that the original trial court had given him conflicting orders — that he stop making payments on the truck and boat and that he sell them — which precluded salvaging any equity. As to Corriene's pension, Daniel argued that his request for adjustment of his pension percentage to account for his share of the marital interest in Corriene's pension was made under Rule 60(b)(5), not Rule 60(b)(1), and that the one-year limit was inapplicable. Daniel also argued that he had raised the issue of Corriene's pension in the 1998-1999 proceedings, within two years of the original divorce proceeding, and therefore it was within the "reasonable time" requirement for Rule 60(b)(5).

The superior court considered the merits of Daniel's reconsideration motion and issued a subsequent order in August 2012. As to the deficiency judgment, the court found that: (1) Daniel had been ordered in the original divorce proceedings to sell the

---

[3]     Rule 60(b)(1) allows a party to seek relief from a final judgment on the grounds of "mistake, inadvertence, surprise or excusable neglect." Rule 60(b) further provides that a (b)(1) motion must be filed not more than one year after the distribution of the final judgment being challenged.

boat and hold the proceeds in trust; and (2) Daniel had disobeyed this order and allowed it to be repossessed, resulting in the deficiency judgment. The court noted Daniel could have raised this issue at the original divorce trial and could have appealed any failure to properly address the deficiency judgment, but he had not done so. As to Corriene's pension, the court stated that Daniel had failed to explain why he waited 14 to 16 years to raise this issue. Analogizing Daniel's claim to that made in *Morgan v. Morgan*,[4] where we held that a party's Rule 60(b)(6)[5] motion was not filed within a reasonable time when it was made three years after discovering an undivided pension (and 29 years after the divorce),[6] the court determined that Daniel's delay was similarly unreasonable. The court therefore denied Daniel's reconsideration motion.

Daniel appeals, arguing that the superior court erred in denying his motion for reconsideration. Corriene, who appeared pro se before the superior court, has not participated in this appeal.

## III.    DISCUSSION

Daniel raises two reasons why the superior court abused its discretion in denying his reconsideration motion. First, Daniel argues that there was no final division of the marital estate until the superior court's 2012 order modifying the QDRO; therefore the entire QDRO, not just the portion relating to child support arrears, remained open to prospective modification. Second, Daniel argues that a prospective application of the superior court's 1996 property distribution was no longer equitable and that he was

---

[4]    143 P.3d 975 (Alaska 2006).

[5]    Rule 60(b)(6) allows a party to seek relief from a final judgment on grounds not covered by (b)(1)-(5) but which would "justify[] relief from the operation of the judgment." Rule 60(b) provides that a (b)(6) motion must be brought "within a reasonable time" after distribution of the final judgment being challenged.

[6]    143 P.3d at 977.

entitled to relief from judgment under Rule 60(b)(5).  We reject both arguments.

## A.    Final Judgment

We first note that Daniel did not raise in the superior court his argument that the 1996 property division was not a final judgment.  This argument is therefore waived.[7]  We next note that Daniel's 1998 and 2011 superior court filings requesting Rule 60(b)(5) relief from a final judgment are inconsistent with this argument.  We finally note that the argument has no merit.

"A property division incorporated within a divorce decree is a final judgment and is modifiable to the same extent as any equitable decree of the court."[8]  And "[a] QDRO simply enforces a court order calling for division of retirement benefits."[9]  "A valid court order dividing a spouse's pension benefits has an immediate legal effect.  The subsequent issuance of a QDRO . . . is a formality."[10]  The fact that Corriene would receive future payments did not make the award of an interest in Daniel's pension prospective or open-ended — as a result of the 1996 divorce property division Corriene owned that portion of the pension generating the future payments.

Daniel obtained Rule 60(b) relief from the 1996 final judgment with the 1999 order providing potential future relief for one specific matter — if Daniel cured his 1996 child support arrearage he could seek an appropriate adjustment of the QDRO percentages.  The 1999 order allowing future alteration of the QDRO did not affect other

---

[7]      *See Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal." (citing *Preblich v. Zorea*, 996 P.2d 730, 736 n. 17 (Alaska 2000))).

[8]      *O'Link v. O'Link*, 632 P.2d 225, 228 (Alaska 1981).

[9]      *Zito v. Zito*, 969 P.2d 1144, 1146 (Alaska 1998).  *See also Gallant v. Gallant*, 882 P.2d 1252, 1256 (Alaska 1994).

[10]      *Gallant*, 882 P.2d at 1256.

aspects of the property division. The order was specific and unambiguous — if Daniel paid his child support the QDRO could be adjusted for those specific payments — and Daniel provides no argument or evidence showing that the court intended to alter any other aspect of the property division.

## B. Rule 60(b)(5) Relief[11]

Rule 60(b)(5) gives a court discretion to relieve a party from a final judgment when "it is no longer equitable that the judgment should have prospective application." "Because of the interest in finality, Rule 60(b) is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment."[12] We have stated that "Rule 60(b)(5) requires some change

---

[11] We assume for purposes of this appeal that Rule 60(b)(5) was an appropriate basis for Daniel to seek relief from the 1996 divorce property division. That provision was the underpinning of his motion for reconsideration in the superior court, and the superior court ruled on the reconsideration motion on that basis. We note, however, that the fundamental basis of Daniel's argument has always been that the original trial court made a mistake in failing to address Corriene's pension and in assigning him full responsibility for the deficiency judgment, although both were discussed at trial. Were the issue before us, we might conclude that the superior court's initial Rule 60(b)(1) analysis was correct, although previous cases with similar issues implicated Rule 60(b)(6). *Cf. Schaub v. Schaub*, ___ P.3d ___, ___ Op. No. 6803, 2013 WL 3958208 (Alaska, Aug. 2, 2013) (affirming decision under AS 25.24.160 to modify divorce decree and divide marital property, even though waiting 20 years after original decree was too long to modify under Rule 60(b)(6), where original decree did not divide or address marital property); *Morgan v. Morgan*, 143 P.3d 975, 976-77 (Alaska 2006) (reversing grant of wife's Rule 60(b)(6) motion to modify 29-year-old divorce decree and property distribution when wife did not know about husband's pension for 26 years, but then waited 3 years before filing her motion); *Lacher v. Lacher*, 993 P.2d 413, 419-20 (Alaska 1999) (affirming grant of husband's Rule 60(b)(6) motion to modify a dissolution decree's property distribution when original distribution omitted substantial items of marital property and parties never actually implemented property distribution).

[12] *Cook v. Cook*, 249 P.3d 1070, 1083 (Alaska 2011) (quoting *Morris v.* (continued...)

in conditions that makes continued enforcement inequitable."[13] Finally, a Rule 60(b)(5) motion for relief from judgment must be made within a reasonable time.[14]

### 1. Change in conditions

Although Daniel does not explicitly argue that a change in conditions made enforcement of the original property distribution inequitable, his position must assume that the cure of his child support arrearage was a change in conditions supporting Rule 60(b)(5) relief. And indeed, leaving the QRDO in place in light of that change of conditions would have resulted in an inequitable double counting. But Daniel points to no change in conditions after the 1996 property division that would render the rest of the property division inequitable. Daniel argues only that the original trial court mistakenly failed to address Corriene's pension and mistakenly addressed the circumstances underlying the deficiency judgment. This is a challenge to the merits of the original property distribution, not an assertion that a subsequent change in conditions made the original distribution inequitable.

The superior court implicitly ruled that there had been no change of conditions warranting Rule 60(b)(5) relief as to the deficiency judgment when it stated that Daniel could have raised the issue at the divorce trial and could have appealed the issue after the final judgment. We agree, and note that the superior court could have made this same determination with respect to Corriene's pension.

---

[12]     (...continued)
*Morris*, 908 P.2d 425, 429 (Alaska 1995)) (internal quotation marks omitted).

[13]     *Dixon v. Pouncy*, 979 P.2d 520, 526 (Alaska 1999) (quoting *Dewey v. Dewey*, 866 P.2d 623, 627 (Alaska 1994)) (internal quotation marks omitted).

[14]     Alaska R. Civ. P. 60(b).

## 2. Motion within a reasonable time

Daniel argues that he brought Corriene's pension to the court's attention after he discovered it in 1998, but that due to possible future modification of the QDRO it was reasonable to wait until the prospective QDRO modification to challenge the original property division. Daniel argues that it was similarly reasonable to delay his challenge of the original trial court's decision regarding the deficiency judgment until the 2012 QDRO modification hearing.

Daniel knew about both Corriene's pension and the deficiency judgment at the time of the 1996 divorce trial. Yet he did not raise the pension issue for resolution until 2011, and did not raise the deficiency judgment issue for resolution until 2012. Daniel argues that the possibility of the QDRO modification to reflect his satisfaction of the child support arrearage left the property division "open-ended" and made his decision to refrain from appealing or litigating his property interests reasonable. As discussed above, the property division was not left open-ended in 1996 or 1999. Moreover, Daniel had no reason to know before 1999 that the QDRO might be subject to future limited modification, and not until 2003 did he satisfy the contingency allowing modification. Daniel provides no acceptable reason for not challenging the property division between 1996 and 1999, and the superior court's 1999 decision to revisit the child support aspect of the QDRO should have had no effect on Daniel's decision to delay his property division challenge for almost 13 more years.

We agree with the superior court that Daniel unreasonably delayed seeking Rule 60(b)(5) relief with respect to Corriene's pension, and note that the superior court could have made this same determination with respect to the deficiency judgment issue.

## IV. CONCLUSION

We AFFIRM the superior court's decision.