*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TERRI L. RUPPE, | ) | |
| | ) | Supreme Court No. S-15311 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-11535 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TERRY C. RUPPE, | ) | |
| | ) | No. 7052 –September 25, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Terri L. Ruppe, pro se, Waialua, Hawaii, Appellant. Terry C. Ruppe, pro se, Fayetteville, North Carolina, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I. INTRODUCTION

Terri Lin Ruppe appeals from a superior court order granting her divorce, determining custody, distributing marital property, and setting child support obligations for her former husband, Terry. She raises issues related to legal custody, the calculation of interim child support, the duration of permanent child support, the distribution of

property, and the non-award of spousal support and attorney's fees. We affirm most of the superior court's findings of fact and conclusions of law, but we reverse its determination that payments Terry made during the pendency of the divorce could be credited against his post-divorce child support obligations.

## II.    FACTS AND PROCEEDINGS

Terry and Terri Lin Ruppe married in 1997. They have a daughter, born in 2004, and permanent guardianship of a niece, born in 1996, and a nephew, born in 1998, the children of Terri Lin's sister. Terry is a warrant officer in the U.S. Army and Terri Lin has been a housewife since 2003. The family moved to Anchorage in April 2010, due to Terry's stationing at Fort Richardson. The Ruppes lived on base in a home that was paid for by the $2,202 Terry received as a monthly Basic Allowance for Housing and owned a residential property in Virginia, which they rented to tenants.

The marriage permanently disintegrated after Terry's return from Afghanistan in October 2012, and Terry moved out in November. Terry made an official request that Terri Lin and the children be permitted to remain in on-base housing until the resolution of the divorce. Although both Terry and Terri Lin believed that she would have to leave that housing by the end of March 2013, she and the children were in fact able to stay in on-base housing until mid-June. Terry filed for divorce in December 2012; Terri Lin counterclaimed in January 2013.

Between the start of the parties' separation and the trial, Terri Lin made two relevant withdrawals from joint accounts. First, she withdrew $4,500 from a joint account after that amount was deposited in the account as per diem pay/travel voucher for a training Terry attended after the separation. Second, she withdrew $4,000 from a joint account associated with the Virginia property and used this amount to pay her initial attorney's fees.

In February 2013 Superior Court Judge Frank A. Pfiffner held an initial status hearing. At this hearing the parties indicated that they believed that Terri Lin and the children would stay in the on-base housing until March 31. At the hearing Terry offered to fulfill his child support obligations by paying Terri Lin $2,200 directly every month until she moved out of the on-base housing that was funded by his Basic Allowance for Housing, and by paying Terri Lin $3,000 directly every month thereafter.

After the February hearing the superior court set interim child and spousal support in a March order. The superior court explicitly included the $2,202 Terry received in Basic Allowance for Housing from the military each month in its calculation of his income, as required by Alaska Rule of Civil Procedure 90.3.[1] The superior court calculated Terry's base monthly child support amount as $2,407.

The March order adopted several of the assumptions and proposals from the February hearing. The order noted that Terry had "testified that he would like to pay $3,000 in child support and spousal support until the divorce trial in May," and thus ordered $2,407 in monthly interim child support and an additional $593 in monthly interim spousal support. The interim child and spousal support order stated that it was effective retroactively to December 2012, the first month after the parties separated. It also stated that Terry was to be credited with the amounts actually paid to Terri Lin since the separation, which the court calculated to be "$4,500 per month . . . (including his [Basic Allowance for Housing] of $2,202 per month through March 31, 2013)" in the worksheet that accompanied the narrative order. The order thus appears to have been written under the assumption that Terri Lin and the children would leave the on-base housing after March 31, an assumption that also explains the superior court's direction that Terry's first payment be due April 1.

---

[1]     *See* Alaska R. Civ. P. 90.3 cmt. III.A.28.

Terri Lin and the children continued to live on base until the May trial, and Terry continued to pay Terri Lin approximately $2,200 a month. Terri Lin interpreted the March order to require Terry to pay her $3,000 directly each month regardless of housing, and she requested that the Child Support Services Division garnish Terry's wages for the additional $800 per month she believed he owed, which the agency did.

In mid-April the parties stipulated to an order that granted Terri Lin primary physical custody of the children and permitted her to relocate to Hawaii. Legal custody and visitation were left for later resolution at trial, which occurred over three days in May.

In July 2013 the superior court granted the divorce, ordered child support, and made findings of fact and conclusions of law. The court reaffirmed that Terri Lin would have primary physical custody, awarded joint legal custody, and provided for unsupervised visitation for Terry during summer vacations and every other Christmas, as well as daily phone calls.

The court also ordered the Ruppes to sell the Virginia property, with Terri Lin to receive 60% of the proceeds. She also received 60% of a thrift savings plan held in Terry's name. The remaining assets were distributed nearly equally, which resulted in Terri Lin receiving a total of 58% of the marital estate.

The superior court's discussion of child support looked both backward and forward. First, the court settled the dispute about the proper interpretation of its interim support order. Terri Lin understood it to require Terry to pay her $3,000 in cash each month, while Terry claimed that Terri Lin's continued residence in housing paid for by a housing allowance tied to his military employment meant that he should receive credit toward his support obligations for that housing allowance. The court agreed with Terry's interpretation and found that he had no unpaid child support because his monthly checks

of $2,200, combined with the housing allowance valued at $2,202, exceeded his monthly $3,000 interim support obligation.

Looking forward, the superior court noted that Terry had permanently changed stations to a base in North Carolina and thus had seen his income reduce sharply. It calculated that his ongoing monthly child support obligation would be $1,667.

The superior court declined to order payment of any further spousal support to Terri Lin. The court based its decision on the fact that it had ordered that she receive 60% of the proceeds from the sale of the Virginia residence and because "Terri Lin ha[d] received additional marital cash assets by misappropriating Terry's post-separation per diem pay in the amount of approximately $4,500.00 and utilized approximately $4,000.00 from the rental property 'rainy day' fund to pay her initial attorney's fees." The "misappropriation" of those two amounts also factored into the superior court's decision not to award attorney's fees to either party.

The superior court issued an order explaining in detail its child support calculation. The order explained that the March 2013 interim support order had set Terry's support at $2,407 per month, dating back to December 2012, but that the court had credited him with $4,500 per month in support during the period of December to March. Thus, the court found that Terry should be credited $2,093 (the difference between his actual payment of $4,500 and the owed child support of $2,407) for each of the four months before the order, totaling $8,372. Further, during the period of April to June, the order explained that Terry had owed $2,407 per month and paid $4,402 per month, composed of $2,200 in cash and $2,202 in housing allowance for the residence Terri Lin and the children occupied. Thus, the superior court found that Terry should be credited $1,995 (the difference between the actual payment of $4,402 and the owed

support of $2,407) for each of those three months, totaling $5,985.  Terry's total credit against future support obligations was therefore $14,357.[2]

Terri Lin appeals.

## III.  STANDARD OF REVIEW

"We will uphold a superior court's custody and visitation determinations 'unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion.' "[3]

"This court reviews legal determinations relevant to property division and child support based on an independent judgment standard."[4]

"Child support awards are reviewed for abuse of discretion."[5]  "Abuse of discretion occurs when a trial court fails to consider statutorily mandated factors, weighs factors improperly, or includes improper factors in its decision."[6]

Whether property is properly characterized as separate or marital "may involve both legal and factual questions. . . ."[7]  The trial court "exercises broad discretion

---

[2]     This calculation appears to have over-credited Terry by omitting the $593 in monthly interim spousal support that the superior court ordered in its March 21, 2013 order establishing interim child and spousal support.  *See* Part IV.B.1, *infra*.

[3]     *Houston v. Wolpert*, 332 P.3d 1279, 1282 (Alaska 2014) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

[4]     *Heustess v. Kelley-Heustess*, 158 P.3d 827, 831 (Alaska 2007).

[5]     *Heustess v. Kelley-Heustess*, 259 P.3d 462, 467 (Alaska 2011).

[6]     *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008).

[7]     *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013) (internal quotation marks omitted).

in the division of marital assets."[8] We review the superior court's equitable allocation of property "for an abuse of discretion,"[9] and will reverse only if the allocation is "clearly unjust."[10]

"This court reviews the decision not to award spousal maintenance for abuse of discretion."[11]

"The award of attorney's fees in a divorce action rests within the broad discretion of the superior court, and will not be disturbed on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.' "[12]

## IV.  DISCUSSION

### A.  Child Custody

Terri Lin argues that the superior court erred by granting both parents joint legal custody and by not granting her final decision-making authority.[13]  We hold that

---

[8]     *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005).

[9]     *Id.*

[10]    *Day v. Williams*, 285 P.3d 256, 260 (Alaska 2012).

[11]    *Silvan v. Alcina*, 105 P.3d 117, 125 (Alaska 2005).

[12]    *Stevens v. Stevens*, 265 P.3d 279, 284 (Alaska 2011) (quoting *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003)).

[13]    Terri Lin also appeals several of the superior court's findings of fact regarding her parenting and Terry's medical history.  These findings are relevant to custody, and in light of the superior court's decision to grant Terri Lin primary physical custody, we understand her to be appealing Terry's visitation rights.  We do not detect any error related to the superior court's grant of visitation, especially in light of our determination "that the best interests of the child standard normally requires unrestricted visitation with the noncustodial parent." *J.F.E. v. J.A.S.*, 930 P.2d 409, 413 (Alaska 1996).

the superior court did not abuse its discretion by awarding the parents joint legal custody of the children.

Terri Lin's contention is that Terry's employment in the military requires frequent travel, training, and deployment, which will make joint legal custody "virtually impossible." The superior court did not agree and determined that if Terri Lin had final decision-making authority Terry might "no longer have a role in the children's lives." This finding was not clearly erroneous, especially given the superior court's award of primary physical custody to Terri Lin and the plan for the children to live with her in Hawaii and for Terry to live in North Carolina.

We have recognized that "[t]he legislature has expressed a preference for joint legal custody."[14] Moreover, the legislature has specifically directed courts that "if a parent is deployed or in a position where the parent may be deployed, the court shall take particular care to ensure that the child has the maximum opportunity, consistent with the best interests of the child, to have contact with the parent."[15] In most cases, "a parent's temporary duty, mobilization, or deployment to military service and the resultant temporary disruption to the child of the parent may not be a factor in a court's decision to grant or deny a petition for custody or visitation."[16] The statutory policy of accommodating military service in custody determinations provides further support for the superior court's grant of joint legal custody.

---

[14]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009).

[15]     AS 25.20.095(a).

[16]     *Id.*

## B. Child Support

### 1. Housing allowance

Terri Lin argues that the superior court erred by crediting Terry with $2,202 toward his monthly child support obligations based on her residence with the three children during the pendency of the divorce in housing paid for by Terry's military housing allowance. Because the Ruppes' living situation provided "good cause" to vary the interim child support award, we affirm the superior court's decision to allow Terry to partially satisfy his interim child support obligations by paying for housing for Terri Lin and the children. But we reverse the superior court's decision to credit Terry's "overpayments" during the interim period against his post-divorce obligations.

There are a number of principles that are relevant to this appeal. "The right to support is that of the child,"[17] and therefore the amount of child support calculated under Civil Rule 90.3 cannot be waived or modified other than for good cause.[18] "[A]n agreement between the parties as to child support is not an exceptional circumstance justifying deviations from the guidelines, where the agreement requires support less than that called for by the guidelines."[19] And although "spousal support is separate and distinguishable from marital property,"[20] those two matters are linked by the similar

---

[17] *State, Dep't of Rev., Child Support Enforcement Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 154 n.14 (Alaska 1997).

[18] *See Cox v. Cox*, 776 P.2d 1045, 1049 (Alaska 1989).

[19] *Id.*; *see also* Alaska R. Civ. P. 90.3 cmt. VI.B.1 ("The fact that the parties . . . agree on an amount of support is not reason in itself to vary the guidelines.").

[20] *Stevens v. Stevens*, 265 P.3d 279, 288 (Alaska 2011).

factors that determine each one[21] and the preference in Alaska courts that spousal maintenance only be awarded if financial concerns cannot be resolved by property division.[22]  With these principles in mind, we turn to the facts of this case.

Civil Rule 90.3 contains a formula that determines child support obligations on the basis of parents' adjusted annual income, the physical custody arrangement, and the number of children the award will support.  We have explained that the formula "reflect[s] a paternalistic view toward child support agreements,"[23] and the commentary to the Rule states that two of the major purposes of the formula are to "ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay" and to make child support awards "[p]redictable and consistent."[24]  "The right

---

[21]    *Compare* AS 25.24.160(a)(2) (factors for maintenance awards), *with* .160(a)(4) (factors for property division); *see also* AS 25.24.160(a)(2)(F) (spousal maintenance award should be based, in part, on the division of property).  For example, in *Hanlon v. Hanlon*, 871 P.2d 229, 233 (Alaska 1994), we found that "[a]lthough the factors trial courts consider in determining whether to award spousal support are essentially identical to those considered in deciding the allocation of marital property, spousal support and property-division serve distinct purposes and are not interchangeable. 'We have announced a policy of encouraging trial courts to provide for parties' financial needs by property disposition, rather than by alimony.' " (citations omitted) (quoting *Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987)).

[22]    *See, e.g.*, *Fernau v. Rowdon*, 42 P.3d 1047, 1058 (Alaska 2002) ("The preference in Alaska is to resolve the financial concerns arising from a divorce by means of the property division, but spousal maintenance may be awarded if it is just and necessary." (citation omitted)).

[23]    *Laughlin v. Laughlin*, 229 P.3d 1002, 1004 (Alaska 2010) (quoting *Cox*, 776 P.2d at 1048).

[24]    Alaska R. Civ. P. 90.3 cmt. I.B.

to support is that of the child,"[25] and the support that results from application of the formula is presumed to contribute to the child's multiple needs, which include food, housing, and clothing.

Crediting payments that provide a home for a spouse and children against child support obligations risks leaving children with insufficient support. Such a practice may dedicate a greater percentage of the total support children are owed to housing costs than the custodial parent would choose to dedicate and may deprive the custodial parent of the ability to provide for the child's other needs.[26] The formula in Civil Rule 90.3 does not anticipate a support order that dedicates an unwieldy percentage of the non-custodial parent's monthly requirement to only one of the multiple needs of the children.

It is possible, however, that the Ruppes' situation is one in which the child support obligation calculated under the usual formula should be varied.[27] Civil Rule 90.3(c)(1) permits the court to "vary the child support award as calculated under

---

[25] *State, Dep't of Rev., Child Support Enforcement Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 154 n.14 (Alaska 1997).

[26] *Cf. Young v. Williams*, 583 P.2d 201, 203 (Alaska 1978) (affirming trial court's refusal to credit voluntary payments against child support obligations because "such voluntary payments to the children quite often are intended for particular purposes whereas the manner in which child support payments are used to meet the children's basic needs is left to the discretion of the parent or guardian with custody").

[27] The military housing allowance represented roughly 40% of Terry's gross annual income but was significantly less flexible than the equivalent value in wages. It is not clear from the record whether the allowance could have paid for two smaller residences during the pendency of the divorce or whether it was in effect committed to the home that continued to house Terri Lin and the children. Aurora Military Housing, the company that provides on-base housing at Fort Richardson, sets the rent for each service member tenant as "equal to the BAH with dependent rate for [that service member's] rank." *Frequently Asked Questions*, AURORA MILITARY HOUSING, http://www.auroramilitaryhousing.com/faqs#rent-bah (last visited Sept. 14, 2015).

the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied." "The 'good cause' inquiry '*must* focus first and foremost on the needs of the children.' "[28] This exception can encompass a variation that reflects the obligor's separate provision of a service that would normally be funded out of the child support award.[29] Such a variation may be particularly appropriate when the superior court is examining parents' conduct before any child support order was entered.[30] Although we have held "that absent extraordinary circumstances, courts should apply the calculation methodology of Rule 90.3 to determine amounts to be reimbursed to custodial parents for support of children during periods not covered by support orders,"[31] the commentary to Rule 90.3 notes that "in some circumstances unfairness may result from rigid [retroactive] application of the rule."[32]

---

[28] *Koller v. Reft*, 71 P.3d 800, 807 (Alaska 2003) (emphasis in original) (quoting *Doyle v. Doyle*, 815 P.2d 366, 373 (Alaska 1991)).

[29] *See Coats v. Finn*, 779 P.2d 775, 777 (Alaska 1989) (" '[G]ood cause' may be present when application of the formula produces a result which requires the non-custodial parent, unreasonably, to contribute substantially more or less than his or her fair share of the amount needed to satisfy the child's reasonable needs."). The Alaska Administrative Code's regulations governing the Child Support Services Division anticipate crediting "in-kind contributions against an obligor's child support obligation if . . . a tribunal of competent jurisdiction has ordered the in-kind contribution in lieu of the payment of child support," 15 Alaska Administrative Code (AAC) 125.470(a)(1) (2014), an indication that in-kind contributions may be appropriate components of superior court child support orders in some circumstances.

[30] *See Ogard v. Ogard*, 808 P.2d 815, 816-17 (Alaska 1991).

[31] *Vachon v. Pugliese*, 931 P.2d 371, 382 (Alaska 1996).

[32] Alaska R. Civ. P. 90.3 cmt. VI.E.1; *see also* 15 AAC 125.105(c) (stating
(continued...)

Here, although the superior court erred by not analyzing the Ruppes' circumstances according to the requirements of Civil Rule 90.3(c)(1),[33] we detect no error in its conclusion that Terry satisfied his interim child support obligations. Terry paid Terri Lin $2,200 directly every month during the pendency of the divorce, and in addition his employment paid for her and the children's home. Taken together, these contributions satisfied Terry's $2,407 monthly interim child support obligation, as well as the $593 monthly interim spousal support obligation that the Ruppes and the superior court appear to have assumed would not apply until Terri Lin and the children moved out of on-base housing. A variation of either $207 or $800 per month to reflect Terry's provision of housing was not legal error. As Terri Lin testified at trial, the additional $800 she believed she was owed each month during the pendency of the divorce could not have paid for housing comparable to the on-base housing she and the children enjoyed during that time.

Although we affirm the conclusion that Terry satisfied his interim support obligations, the superior court's treatment of Terry's child support obligations following the divorce constituted legal error. The July 15, 2013 order concluded that Terry had overpaid during the period between the Ruppes' separation and final divorce, and so awarded him a $14,357[34] credit against his future obligations. This conclusion ignores

---

[32](...continued)
that the Child Support Services Division "will give credit for [pre-order] in-kind contributions" under certain circumstances).

[33]    *See* Alaska R. Civ. P. 90.3(c)(1) ("The court must specify *in writing* the reason for the variation, the amount of support which would have been required but for the variation, and *the estimated value of any property conveyed instead of support calculated under the other provisions of this rule*." (emphasis added)).

[34]    We note that this figure appears to have been the result of a math error. It
(continued...)

the fact that Terry paid Terri Lin the amount he proposed at the February hearing: $2,200 per month plus the housing, while she remained in the house. The supposed overpayment only emerges by comparing the full dollar value of what Terry contributed to Terri Lin with the result of the Rule 90.3 formula. But contributing more than the formula dictates is not an overpayment when it is done pursuant to the parties' proposed compromise.

Even if Terry had paid Terri Lin too much during the interim period, it was error to credit any voluntary overpayment against his future obligations. We have held that "it is contrary to the purpose of Civil Rule 90.3 to offset such contributions against future child support payments except in exceptional circumstances."[35] In that case, *Epperson v. Epperson*, we suggested that such an offset should be recognized only if the parties agreed at the time the contributions were made that they would constitute prepayment of future child support.[36]

---

[34](...continued)
was reached by comparing the amounts Terry paid to Terri Lin with the interim child support obligation established in the March 2013 order. However, the March 2013 order also required Terry to pay Terri Lin $593 in monthly interim spousal support. Thus, even by its own terms the superior court's July 15, 2013 order overstated Terry's overpayment by $4,151.

[35]    *Epperson v. Epperson*, 835 P.2d 451, 453 (Alaska 1992); *cf.* 15 AAC 125.105(d) ("When giving credit for direct payments . . . or in-kind contributions [made before an order is entered], the agency will give credit only up to the amount of the support that is charged for the [pre-order] period . . . .").

[36]    *See* 835 P.2d at 453 ("On the record presented, it is clear that the court did not abuse its discretion in ruling that the 'gifts' [the husband] made to [the wife] could not be credited against his child support obligation. [The husband] does not claim that he and [the wife] agreed that his contributions were to constitute prepayment of future child support.").

Such "exceptional circumstances" were not present here. As explained above, Terry's payments were made pursuant to a payment plan that he proposed. During the pendency of the divorce Terry did not directly pay Terri Lin the amount prescribed by Civil Rule 90.3, and while his provision of housing easily satisfied the difference between what he did pay and that prescribed amount, any excess value of that housing should not have been credited against his future child support obligations.

## 2. Duration of child support

Terri Lin argues that the superior court erred by failing to explicitly note that its order for child support was to continue beyond the time a child turns 18 if that child is still in high school. Alaska Statute 25.24.170 anticipates continued support "for the care, nurture, and education of unmarried 18-year-old children of the marriage while they are actively pursuing a high school diploma,"[37] and we have held that only in "the exceptional case" should a court decline to extend support to such an 18-year-old.[38] In light of these policies, we will not read into the superior court's order a strict end date at a child's 18th birthday. Instead we presume that the superior court intended the support order to continue for any 18-year-olds actively pursuing a high school diploma.

## 3. Evidence of Terry's income

Terri Lin argues that the superior court erred by using an estimate of Terry's future income to set his future child support obligations, rather than requiring Terry to provide an earning statement. Terry did not move to North Carolina and start receiving his new salary until June, so at the time of the May trial no such statement existed. Moreover, Terri Lin did not produce any evidence at trial suggesting that Terry's estimate of his future pay rate was inaccurate. In light of the timing of the trial

---

[37] AS 25.24.170.

[38] *Scully v. Scully*, 987 P.2d 743, 747 (Alaska 1999).

and the parties' respective moves out of Alaska, crediting Terry's estimate was an evidentiary decision within the superior court's discretion. If Terry's salary materially differs from the estimated amount, Terri Lin can seek to modify the child support order.[39]

## C. Property Division

### 1. GI Bill benefits

Terri Lin appeals the superior court's refusal to require Terry to assign education benefits he is entitled to via the GI Bill. At trial she claimed that Terry promised these benefits to her niece, while Terry testified that he had not made that promise and that he was not yet eligible for the benefit in question. In light of the conflicting testimony on this question and the absence of other relevant evidence, we cannot say that the superior court's determination that the benefit should stay with Terry was clearly erroneous.

### 2. Withdrawals from joint accounts

Terri Lin also argues that the superior court erred by considering her withdrawals of $4,500 and $4,000 from joint accounts in the context of the division of marital property. We do not detect any error related to the superior court's treatment of these withdrawals in the division of marital property.

"As a general rule, 'property acquired after separation is properly excluded from the category of marital property.' "[40] The $4,500 withdrawal followed the deposit of per diem travel allowances related to Terry's post-separation training travel. Rather than force Terri Lin to repay Terry the full amount of the post-separation property she had withdrawn, the superior court counted the withdrawal as if it had been from marital

---

[39] *See* Alaska R. Civ. P. 90.3(h).

[40] *Richter v. Richter*, 330 P.3d 934, 939-40 (Alaska 2014) (quoting *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992)).

property. This treatment favored Terri Lin, as it only reduced her award from the rest of the marital property by half of the withdrawn amount.

The $4,000 withdrawal was from the account funded by rental income from the Ruppes' Virginia property. Terri Lin used these funds to pay her initial attorney's fees. The record does not clearly reveal whether the superior court credited her with already having received that amount of the marital estate. The court referenced the $4,000 withdrawal several times in its findings of fact, but Exhibit A, which documents the distribution of marital assets, does not contain an entry for this $4,000 withdrawal of rental income as it does for the $4,500 withdrawal of post-separation per diem pay. If the superior court did credit the $4,000 withdrawal against Terri Lin's share of the marital estate, doing so was not error.[41]

Terri Lin requested 60% of the marital assets and received 58%. Under these facts, the superior court's equitable division of property was not erroneous.

### D.    Spousal Support

Terri Lin argues that the superior court erred by not ordering that she receive spousal support following the divorce.

"The preference in Alaska is to resolve the financial concerns arising from a divorce by means of the property division, but spousal maintenance may be awarded if it is just and necessary."[42]   "[T]he primary factors which should be considered in awarding interim[43] spousal maintenance are the relative economic circumstances and

---

[41]    *Cf. Schmitz v. Schmitz*, 88 P.3d 1116, 1131 (Alaska 2004) (holding that an uncounted benefit from the sale of a marital asset should be treated as an award of attorney's fees).

[42]    *Fernau v. Rowdon*, 42 P.3d 1047, 1058 (Alaska 2002) (footnote omitted).

[43]    Despite the inclusion of the word "interim" here, this quotation comes from (continued...)

needs of the parties and the ability to pay the maintenance."[44] The superior court noted that "[i]n order to have marketable skills in her college major, [Terri Lin] will need to get a master's degree." It found, however, that "[t]he net equity from the Virginia rental property split in favor of [Terri Lin] will give her the opportunity for funds to complete her education, obtain medical insurance, and support herself." To award spousal support, the superior court must "make adequate findings showing that the property division is insufficient to meet the parties' needs."[45] Thus, finding that the split of marital property was sufficient to equip Terri Lin to continue her education was not an abuse of discretion.

### E.    Attorney's Fees

Terri Lin argues that the superior court erred by failing to award her attorney's fees. Under these facts we cannot conclude that the superior court's decision was an abuse of its "broad discretion in awarding attorney's fees in divorce actions."[46] Both parties were represented by counsel before the superior court and represent themselves on appeal; additionally, the superior court found that Terry had "no ready cash to pay for an award of attorney's fees." Moreover, the superior court awarded Terri Lin 60% of the thrift savings plan and the proceeds from the sale of the Virginia

---

[43](...continued)
a case evaluating a request for post-divorce maintenance.

[44]    *Carr v. Carr*, 152 P.3d 450, 456 (Alaska 2007) (quoting *Johnson v. Johnson*, 836 P.2d 930, 934 (Alaska 1992)).

[45]    *Urban v. Urban*, 314 P.3d 513, 516 (Alaska 2013).

[46]    *Schmitz*, 88 P.3d at 1122.

property; in total, she received 58% of the marital assets. The superior court was within its discretion to find that the parties were litigating on an equal plane.[47]

## V.    CONCLUSION

The superior court's findings of fact and conclusions of law regarding child custody, interim child support, permanent child support, property division, permanent spousal support, and attorney's fees are AFFIRMED and its conclusions of law regarding credits against permanent child support for interim overpayments are REVERSED.

---

[47]    *See Heustess v. Kelley-Heustess*, 259 P.3d 462, 479 (Alaska 2011) ("The purpose of AS 25.24.140 in a divorce proceeding is to 'assure that both spouses have the proper means to litigate the divorce action on a fairly equal plane.' " (quoting *Sanders v. Sanders*, 902 P.2d 310, 319 (Alaska 1995))).