NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES PATRICK KACK, | ) | |
| | ) | Supreme Court No. S-15863 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-09-01145 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| RHONDA KAY KACK, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1587 – June 1, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: James Patrick Kack, pro se, Spearfish, South Dakota, Appellant. Rhonda Kay Kack, pro se, Wasilla, Appellee.

Before: Fabe, Winfree, Maassen, and Bolger, Justices. [Stowers, Chief Justice, not participating.]

## I. INTRODUCTION

After a father relocated to pastor outside Alaska, his former spouse moved to modify child custody and support. The superior court calculated the father's net income based on factual findings about the father's income tax, pastoral tithing, and housing benefit, and then made discretionary decisions about which party should be entitled to the dependent child tax deduction and whether the father should continue to be obligated to support the oldest child, who had turned 18. Because the income tax and

---

\* Entered under Alaska Appellate Rule 214.

tithing findings were clearly erroneous, we remand for recalculation of child support consistent with this decision. We affirm the superior court in all other respects.

## II.    FACTS AND PROCEEDINGS

When James and Rhonda Kack divorced in 2009, they both lived in Wasilla and equally shared legal and physical custody of their three children, aged 18, 15, and 13 as of the January 2015 proceedings to modify child support. All three children attended private schools; the oldest child attended a private boarding school for ten months each year beginning in 2013. James pastored for a local church in the Alaska Conference of Seventh-Day Adventists, which subsidized his children's tuition, but purportedly only when James claimed the children for the federal dependent tax deduction on his income tax return. To maximize this employer-provided tuition subsidy James and Rhonda stipulated in 2013 to assign James the federal dependent tax deduction for all three children every year, even though they equally shared custody.[1]

After James told Rhonda he would relocate from Wasilla in July 2014 to pastor for a church in South Dakota, Rhonda sought a modification of child custody and child support. In January 2015 the superior court granted Rhonda sole legal custody, primary physical custody, and the federal dependent tax deduction for the two minor

---

[1]    In 2013 James and Rhonda entered into a "Stipulation and Order to Clarify School Tuition and Child Support Obligations." They previously had alternated claiming one or two children each year for federal dependent tax deductions. This stipulation changed the tax deduction arrangement, adjusted Rhonda's claim for the children's Permanent Fund Dividends, clarified tuition expenses between the parents after applying contributions from the church, gave James child support credit for the oldest child during the months her boarding school was in session, specified that James's employer-provided tuition subsidy did not count toward James's income for child support purposes, determined travel expenses to be paid by each parent for the children, and incorporated all other terms of the divorce settlement.

children,[2] effectively vacating the parties' 2013 stipulation. In February the court modified James's child support obligation based on the new custody arrangement and on two pay stubs from James's new employer, the Dakota Conference of Seventh-Day Adventists. In this modification order the court: (1) deducted only $1,200 as tax from James's annual income; (2) did not deduct any tithe obligation from income; (3) included an employer-provided housing benefit as income; (4) allocated the federal dependent tax deduction for the two younger children to Rhonda; (5) continued James's child support obligation after the oldest child turned 18; and (6) vacated the parties' 2013 stipulation.

On appeal James disputes all of these rulings.[3]

## III. DISCUSSION

### A. Income Calculation Issues[4]

#### 1. It was error to deduct only $1,200 in annual taxes.

Before James's relocation his net income for child support purposes was calculated with both a federal income tax deduction and a self-employment tax deduction

---

[2] Since 2010 Rhonda has had primary physical custody of the oldest child, who turned 18 in November 2014 and whose legal custody was not disputed.

[3] James also disputes the superior court's failure to grant him a credit against his child support for the two younger children's 2015 extended summer visitation, but this issue was mooted after the superior court's July 2015 order granting him that credit. *See* Alaska R. Civ. P. 90.3(a)(3) (specifying child support credit allowed for noncustodial parent if children visit for more than 27 consecutive days); *id.* cmt. IV.B (explaining need for child support adjustment because of noncustodial parent's increased expenses during extended visitation); *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167-68 (Alaska 2002) (finding claim moot after appellant secured relief requested).

[4] "We review factual findings regarding a party's income when awarding child support for clear error." *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013) (citing *Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011)).

together totaling nearly $8,000. After relocation his modified child support was based on net income calculated with only a federal income tax deduction of $1,200. But the superior court found that James's financial position had not materially changed since his original child support was calculated in August 2010, that after his relocation James held a similar job with similar benefits, and that he enjoyed in South Dakota the same standard of living as he had in Alaska. Despite this finding James's modified child support obligation does not include a self-employment tax deduction, creating a significant discrepancy from his original net income.

The finding of $1,200 for James's annual federal income tax was based on two pay stubs issued by James's new employer, each indicating a $100 monthly income tax deduction. But the year-end pay stub also showed year-to-date total federal income tax deductions of $2,534.67, inconsistent with only $100 in monthly deductions. The superior court did not explain why it calculated $1,200 rather than $2,534.67 as James's annual tax. Using pay stubs to calculate income for child support purposes may be proper,[5] but inconsistencies here indicate clear error in the finding and that other documents are necessary for clarification. When the superior court made this calculation James had not yet filed a 2014 federal income tax return. But by now this tax return should be available to ascertain James's actual 2014 self-employment and federal income tax obligations.

### 2. It was error not to deduct a mandatory tithe.

As a condition of employment pastors who work for the Dakota Conference of Seventh-Day Adventists must tithe 10% of their income, including the pastor's salary

---

[5]    *See* Alaska R. Civ. P. 90.3(e)(2) (allowing documents "such as tax returns and pay stubs" to show party's income from previous calendar year); *id.* cmt. VIII.A ("Suitable documentation of earnings might include paystubs, employer statements, or copies of federal tax returns.").

and housing allowance. The superior court previously had deducted the tithe to calculate James's original child support obligation after considering evidence that tithing was mandatory for pastors to retain their positions. But the court did not deduct the tithe in calculating James's modified child support. Because it appears that a 10% tithe is mandatory, not voluntary, absent some explanation on remand it should be deducted from James's income.

### 3. It was not error to include employer-provided housing benefits as James's income.

A trial court must calculate a parent's total income "from all sources"[6] and employer-provided housing benefits are income if the benefits are "significant and reduce living expenses."[7] James pays $630 in monthly rent for a four-bedroom parsonage owned by his employer in South Dakota. The court requested further information about how much rent James's employer absorbs by setting his rent at $630, but James did not timely submit further information on the market rental price of his house. Rhonda submitted information estimating between $1,100 and $1,850 as the rental range for comparable homes.

The court used Rhonda's lowest estimated market value for James's parsonage — in finding a $450 monthly housing benefit the court assumed a rental rate of $1,080 for James's parsonage, $20 less than Rhonda's lowest market estimate — and found $5,400 annually, or $450 monthly, employer-provided housing benefits. This contribution constitutes a 41% reduction in James's rent, and it is significant; the

---

[6]     Alaska R. Civ. P. 90.3(a)(1).

[7]     *Id.* cmt. III.A.19.

superior court thus did not err by including $5,400 as additional income to calculate James's child support.[8]

## B. Other Issues

### 1. It was not an abuse of discretion to give Rhonda federal dependent tax deductions for the two minor children.

A court "may allocate the dependent tax deduction for each child between the parties as is just and proper and in the child's best interests" subject to the provisions of AS 25.24.152 and federal law.[9] Though the law presumes dependent tax deductions for the parent who has primary physical custody,[10] it does not forbid a different arrangement.[11] Here the court awarded Rhonda federal dependent tax deductions for the two younger children because: (1) she has primary physical custody, care, and control of the children; (2) she has not received increased child support despite being their primary caretaker after James relocated; and (3) James's claim — that he must receive

---

[8] James also contends that his occupation of the parsonage should not increase his income for child support purposes because: (1) the parsonage is under renovation, thus restricting him from its full use; (2) his stay is temporary; and (3) his living expenses are not reduced by living in the parsonage. *See* Alaska R. Civ. P. 90.3(a)(1); *id.* cmt. III.A.19 (defining income). Because James provided no support for these claims, we do not need to address their merits. *See Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005) ("[E]ven when a pro se litigant is involved, an argument is considered waived when the party 'cites no authority and fails to provide a legal theory' for his or her argument." (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004))).

[9] Alaska R. Civ. P. 90.3(k); *see* AS 25.24.152 (providing that a court may not unconditionally grant dependent tax deductions for child to noncustodial parent but may grant deduction during a tax year if parent is not in arrears for previous child support).

[10] *See* AS 25.24.152(a)-(b).

[11] *See Skinner v. Hagberg*, 183 P.3d 486, 492-93 (Alaska 2008) (finding no abuse of discretion in conditionally allocating federal tax deduction to noncustodial parent).

the dependent tax deduction for a child before his employer will subsidize that child's education — is "not convincing."

The record shows that the superior court heard testimony on whether the children's tuition would be subsidized based on the allocation of their dependent tax status to their parents. Though James claimed that his employer would subsidize tuition only for the "dependent children" of its employees, the court found this has not been true in the past — "[t]here have been years that [Rhonda] claimed [the children] as dependents and [James's employer] . . . paid the bill." Because the court's allocation complies with the statute and the rule,[12] and because we defer to the superior court in weighing conflicting evidence,[13] on the record before us we conclude that the court did not abuse its discretion in awarding the deductions to Rhonda.

### 2. It was not error or an abuse of discretion to continue James's child support obligation for his oldest child after she turned 18.

Requiring child support for an 18-year-old child is permitted if the child is: (1) unmarried; (2) pursuing a high school diploma or an equivalent level of technical or vocational training; and (3) living as a dependent with a parent, guardian, or designee of the parent or guardian.[14] The legislature provided for these conditions to ensure that children who turn 18 prior to receiving their high school diplomas continue to receive support from their noncustodial parent and do not have to turn to public assistance.[15]

---

[12] *See* AS 25.24.152; Alaska R. Civ. P. 90.3(k).

[13] *See Maloney v. Maloney*, 969 P.2d 1148, 1150 (Alaska 1998).

[14] AS 25.24.170(a).

[15] *See Scully v. Scully*, 987 P.2d 743, 744-45 (Alaska 1999) (explaining the legislature's purpose in amending AS 25.24.170(a) with conditions qualifying an 18-year-old child for continued support from the noncustodial parent).

And we have held that "only in 'the exceptional case' should a court decline to extend support" to an 18-year-old child who meets these statutory conditions.[16]

James and Rhonda's oldest child turned 18 in November 2014 and became subject to the conditions for receipt of post-majority child support. But although she was unmarried and pursuing a high school diploma, she lived at her boarding school for ten months each year rather than with either parent.[17] If, as James argues, she should stop receiving child support after turning 18 based on this technicality, she would be in the very situation the legislature sought to prevent — forced, upon turning 18, to continue her high school education without receiving the support she had depended on to obtain her diploma.

The record in this case does not show that when this child turned 18 her economic situation changed, that she spent less time living at home during the two months she was not in boarding school, or that she pursued her high school diploma in a manner different from before she turned 18. This is not "the exceptional case" in which a court should decline to extend child support.[18] Consistent with the intent of AS 25.24.170(a), turning 18 should not be the event that triggers terminating this child's support; thus the superior court did not err or abuse its discretion in continuing James's support obligation until the child's high school graduation.

---

[16] *Ruppe v. Ruppe*, 358 P.3d 1284, 1293 (Alaska 2015) (quoting *Scully*, 987 P.2d at 747).

[17] *See* AS 25.24.170(a) (providing as condition for receiving post-majority support "living as [a] dependent[] with a parent, guardian, or designee of the parent or guardian").

[18] *See Ruppe*, 358 P.3d at 1293; *Scully*, 987 P.2d at 747.

**3.    It was not error to vacate the 2013 "Stipulation."**

James argues that the superior court wrongfully vacated the 2013 "Stipulation and Order to Clarify School Tuition And Child Support Obligations" because it remains necessary to: (1) give James federal dependent tax deductions for all three children and (2) specify that the tuition subsidy provided by James's employer is not income for purposes of calculating his child support. But neither condition is currently relevant. The court explicitly vacated the dependent tax deduction provision in the stipulation by giving Rhonda the deductions for the two younger children. And the court did not count any tuition subsidy toward James's income in his modified child support obligation. The court's April 27, 2015 order modifying child custody further addressed all other provisions in the stipulation by furnishing alternate instructions on each issue. The stipulation is thus no longer necessary and vacating it was not error.

## IV.    CONCLUSION

We REMAND for recalculation of James's child support consistent with this decision.